# EXHIBIT 1

# FILED UNDER SEAL

# EXHIBIT 2

# FILED UNDER SEAL

# EXHIBIT 3

# FILED UNDER SEAL

# EXHIBIT 4

# FILED UNDER SEAL

# EXHIBIT 5

# GeoIP2 City Database Demo

**GeoIP2 Precision Services**

| Country |
| City |
| Insights |
| Free Trial Account |

**GeoIP2 Databases**

| Country |
| City |
| ISP |
| Domain Name |
| Connection Type |
| GeoLite2 Redistribution |
| Anonymous IP |
| Enterprise |

**IP Addresses**

107.22.216.32, 107.22.216.35,  107.22.216.38, 107.22.216.39, 107.22.216.42, 107.22.216.44, 107.22.216.47, 107.22.216.48

Enter up to 25 IP addresses separated by spaces or commas. You can also test your own IP address.

Submit

## GeoIP2 City Results

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius | ISP | Organization | D... |
|---|---|---|---|---|---|---|---|---|
| 107.22.216.32 | US | Ashburn, Virginia, United States, North America | 20149 | 39.0481, -77.4728 | 1000 | Amazon.com | Amazon.com | an... |

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius | ISP | Organization | D... |
|---|---|---|---|---|---|---|---|---|

| IP Address | Country Code | Location | Postal Code | Approximate Coordinates* | Accuracy Radius | ISP | Organization | Do |
|---|---|---|---|---|---|---|---|---|
| 107.22.216.35 | US | Ashburn, Virginia, United States, North America | 20149 | 39.0481, -77.4728 | 1000 | Amazon.com | Amazon.com | an |
| 107.22.216.38 | US | Ashburn, Virginia, United States, North America | 20149 | 39.0481, -77.4728 | 1000 | Amazon.com | Amazon.com | an |
| 107.22.216.39 | US | Ashburn, Virginia, United States, North America | 20149 | 39.0481, -77.4728 | 1000 | Amazon.com | Amazon.com | an |
| 107.22.216.42 | US | Ashburn, Virginia, United States, North America | 20149 | 39.0481, -77.4728 | 1000 | Amazon.com | Amazon.com | an |
| 107.22.216.44 | US | Ashburn, Virginia, United States, North America | 20149 | 39.0481, -77.4728 | 1000 | Amazon.com | Amazon.com | an |

| 107.22.216.47 | US | Ashburn, Virginia, United States, North America | 20149 | 39.0481, -77.4728 | 1000 | Amazon.com | Amazon.com | am |
| 107.22.216.48 | US | Ashburn, Virginia, United States, North America | 20149 | 39.0481, -77.4728 | 1000 | Amazon.com | Amazon.com | am |

ISP and Organization data is included with the purchase of the GeoIP2 ISP database or with the purchase of the GeoIP2 Precision City or Insights services.

Domain data is included with the purchase of the GeoIP2 Domain Name database or with the purchase of the GeoIP2 Precision City or Insights services.

* Latitude and Longitude are often near the center of population. These values are not precise and should not be used to identify a particular address or household.

MaxMind, GeoIP, minFraud, and related trademarks belong to MaxMind, Inc.

## PRODUCTS

minFraud Services

GeoIP2 Precision Services

GeoIP2 Databases

Open Source Data

## SUPPORT

Support Center

System Status

Frequently Asked Questions

GeoIP Data Correction Request

## DEVELOPERS

minFraud

GeoIP

Proxy Detection

Frequently Asked Questions

## COMPANY

About MaxMind

Leadership

Career Opportunities

Partnership Programs

Partners

Corporate Giving

Contact Us

# EXHIBIT 6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FLEMMING KRISTENSEN,

Plaintiff,

v.

CREDIT PAYMENT SERVICES, f/k/a
MYCASHNOW.COM; ENOVA
INTERNATIONAL, INC.; PIONEER
FINANCIAL SERVICES, INC.; LEADPILE
LLC; and CLICKMEDIA LLC, d/b/a
NET1PROMOTIONS LLC,

Defendants.

Case No. 2:12-cv-00528-APG-PAL

ORDER DENYING MOTIONS TO DISMISS AND
GRANTING MOTION FOR CLASS
CERTIFICATION

(Dkt. Nos. 65, 67, 113)

I. **BACKGROUND**

Flemming Kristensen ("Kristensen") filed a class action claiming that Credit Payment

Services ("CPS"), a payday lender formerly known as MyCashNow.com, marketed its services to

him by causing its agents to send an unauthorized text message to his cell phone. The alleged text

message stated:

> DO YOU NEED UP TO $5000 TODAY?
> EASY QUICK AND ALL ONLINE AT:
> WWW.LEND5K.COM
> 24 MONTH REPAY, ALL CREDIT OK
> REPLY STOP TO END[1]

The Complaint alleged that the website in the text message—www.lend5k.com—

automatically redirected to websites owned and operated by CPS and/or its agents who promoted

---

[1] (Dkt. No. 1 at 4; Dkt. No. 35 at 6.)

1    CPS's payday loan products. Upon the approval of a completed loan application, customers

2    received a loan agreement with a truth-in-lending disclosure which identified CPS's

3    MyCashNow.com entity as the lender. Kristensen further alleged that CPS and/or its agents sent

4    text messages using a dedicated telephone number and automated dialing equipment, and that he

5    did not consent to receive the above text message. Kristensen claims this conduct violated 47

6    U.S.C. § 227(b)(1)(A)(iii), a subsection of the federal Telephone Consumer Protection Act of

7    1991.

8         In February 2013, the Court denied CPS's motion to dismiss and granted Kristensen's

9    motion to amend the Complaint to name additional defendants.[2] In March 2013, Kristensen

10   timely filed his First Amended Class Action Complaint (the "FAC").[3] He added four defendants:

11   Enova International, Inc. ("Enova"), Pioneer Financial Services, Inc. ("Pioneer"), LeadPile LLC

12   ("LeadPile"), and ClickMedia LLC, d/b/a Net1Promotions LLC ("Click Media") (collectively

13   with CPS, the "Defendants").

14        Kristensen alleges that, like CPS, Enova and Pioneer are short-term, payday lenders

15   (collectively, the "Lender Defendants"). He contends that in October 2010, if not before, the

16   Lender Defendants contracted with LeadPile to generate customers. LeadPile, in turn, allegedly

17   contracted with various companies, including Click Media, to generate leads and drive web traffic

18   to Defendants' websites. Next, Click Media allegedly "directed" various unnamed "affiliate

19   marketers to transmit *en masse* text messages containing 'links' that direct[ed] consumers to

20   various websites operated by Defendants and/or their agents."[4]

21        Kristensen asserts that "[w]hen a customer visits one of these websites, he or she is

22   automatically redirected to websites controlled by Click Media, where consumers begin the loan

23   application process in order to receive loans directly from [the Lender Defendants]."[5] Kristensen

24   next asserts that he received the above text message in December 2011 from the phone number:

25   _____

26        [2] (Dkt. No. 33.)

        [3] (Dkt. No. 35.)

27        [4] (*Id.* ¶ 31 (emphasis in original).)

28        [5] (*Id.* ¶ 32.)

13305646316.[6]  He again alleges that Click Media owns the website "www.lend5k.com," and he newly alleges that Click Media also owns the website to which "www.lend5k.com" automatically redirects: "https://thesmartcreditsolution.securelinkcorp.com."[7]  When a consumer applies for a loan on this latter site, "the consumer is forwarded to a website owned and operated by . . . LeadPile, who then matches each customer with specific lenders, including [the Lender Defendants]."[8]

Kristensen alleges that Defendants sent the above text message to him using "equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial such numbers."[9]  "These text calls were made *en masse* through the use of a dedicated telephone number without the prior express of [Kristensen] and the other members of the [purported] Class to receive such wireless spam."[10] [11]

The FAC pleads the same sole claim for relief as the Complaint: violation of 47 U.S.C. § 227(b)(1)(A)(iii).  Kristensen seeks the following relief: (1) an order certifying the Class as defined in the FAC;[12] (2) actual and/or statutory damages; (3) an injunction requiring Defendants to cease all wireless spam activities; and (4) costs and reasonable attorney's fees.

Click Media has moved to dismiss the FAC under Rule 12(b)(6) on the basis that Kristensen has insufficiently pled that either Click Media or its purported agents sent the text message to him.[13]  LeadPile makes substantially similar arguments in its motion to dismiss.[14]

---

[6] (*Id.* ¶ 35.)

[7] (*Id.* ¶ 36 n.2.)

[8] (*Id.* ¶ 37.)

[9] (*Id.* ¶ 48.)

[10] (*Id.* ¶ 49.)

[11] Kristensen's Motion for Class Certification alleges other facts, but the Court's analysis of the Motions to Dismiss is based solely on the facts alleged in the FAC.  Where appropriate, the additional facts alleged in the Motion for Class Certification are discussed in the section below addressing class certification.

[12] The proposed class description in the Motion for Class Certification supersedes the description in the FAC.

[13] (Dkt. No. 65.)

[14] (Dkt. No. 67.)

Kristensen responded that (1) the ordinary rules of agency do not apply to vicarious liability under the TCPA; rather, a defendant is liable if a text message was sent on its behalf such that it received some benefit from the text message; and (2) even if the ordinary rules of agency apply, the TCPA claim survives because the FAC's factual allegations support a reasonable inference that the text message to Kristensen was sent by agents of Click Media and LeadPile, respectively.[15]

One week after submitting his response, Kristensen filed a notice of supplemental authority. [16] He calls the Court's attention to the Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules released by the Federal Communications Commission on May 9, 2013.[17] Broadly put, the 2013 FCC Ruling represents and explains the FCC's determination that vicarious liability under 47 U.S.C. § 227(b) is governed by federal common law principles of agency. The FCC issued this document after a notice-and-comment period in which various interested parties submitted comments and replies to those comments.[18] Kristensen relies on the 2013 FCC Ruling to assert that federal common law agency principles apply instead of state agency laws, and that the consumer need not provide proof of vicarious liability at the time he files his complaint. Kristensen is correct on both points. However, although proof is not required at the pleading phase because all well-pleaded allegations in a complaint are deemed true, those allegations must nonetheless support a plausible claim for relief.[19]

Kristensen subsequently filed a motion for class certification.[20] This Order resolves the two motions to dismiss and the class certification motion.[21]

---

[15] (Dkt. No. 71.)

[16] (Dkt. No. 72.)

[17] *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of Cal., Ill., N.C., & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574 (2013) [the "2013 FCC Ruling"].

[18] (Dkt. No. 72-1 at 6, 7, 23.)

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009).

[20] (Dkt. No. 113)

[21] (Dkt. Nos. 65, 67, 113.)

## II.   ANALYSIS

### A.   Motions to Dismiss

#### 1.   Legal Standard — Fed. R. Civ. P. 8, 12(b)(6)

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."[22] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[23] "Factual allegations must be enough to rise above the speculative level."[24] To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face."[25]

District courts must apply a two-step approach when considering motions to dismiss.[26] First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.[27] Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations.[28] Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[29] Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[30] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[31] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is

---

[22] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[23] *Iqbal*, 556 U.S. at 678.

[24] *Twombly*, 550 U.S. at 555.

[25] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[26] *Id.* at 679.

[27] *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013).

[28] *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.

[29] *Iqbal*, 556 U.S. at 678.

[30] *Id.* at 679.

[31] *Id.* at 663.

1   entitled to relief."[32]  When the claims have not crossed the line from conceivable to plausible, the

2   complaint must be dismissed.[33]  "Determining whether a complaint states a plausible claim for

3   relief will . . . be a context-specific task that requires the [district] court to draw on its judicial

4   experience and common sense."[34]

5               **2.      Legal Standard — Telephone Consumer Protection Act**

6           In pertinent part, the TCPA provides:

7           It shall be unlawful for any person . . . to make any call (other than a call made . . .
            with the prior express consent of the called party) using any automatic telephone
8           dialing system . . . to any telephone number assigned to a . . . cellular telephone
            service[.][35]
9

10  "The term 'automatic telephone dialing system' ["ATDS"] means equipment which has the

11  capacity . . . to store or produce telephone numbers to be called, using a random or sequential

12  number generator; and . . . to dial such numbers."[36]  A text message to a cell phone is considered

13  a "call" for purposes of the TCPA.[37]

14          The Ninth Circuit has established three elements for a TCPA violation: "(1) the defendant

15  called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express

16  consent."[38]

17          The 2013 FCC Ruling determined that vicarious liability under the TCPA, 47 U.S.C.

18  § 227(b) in particular, is governed by federal common law principles of agency.[39]  Even if

19  *Chevron* deference does not apply to that ruling because it arguably does not have the force of

20

21

22  _____

23          [32] *Id.* at 679 (internal quotation marks and citation omitted).

            [33] *Twombly*, 550 U.S. at 570.

24          [34] *Iqbal*, 556 U.S. at 679.

25          [35] 47 U.S.C. § 227(b)(1)(A)(iii).

26          [36] *Id.* § 227(a)(1).

            [37] *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

27          [38] *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

28          [39] 2013 FCC Ruling , 28 F.C.C.R. at 6586–87.

1  law and arguably was not promulgated under the FCC's rulemaking authority, *Skidmore*

2  deference applies because the FCC's reasoning is sound.[40]

3      Kristensen argues that a 1995 FCC Ruling[41] determined that vicarious liability under the

4  TCPA is governed by an "on behalf of" standard which imposes liability on any party that

5  benefits from an unsolicited call made in violation of 47 U.S.C. § 227(b), regardless of whether

6  an agency relationship existed. However, the 1995 FCC Ruling is apparently superseded by the

7  2013 FCC Ruling. Also, Kristensen's selective quotation of the 1995 ruling is misleading. Here

8  is the relevant paragraph from the 1995 ruling, with the portion Kristensen quoted in italics:

9      Our *rules generally establish that the party on whose behalf a solicitation is made

10     bears ultimate responsibility for any violations.* Calls placed by an agent of the
       telemarketer are treated as if the telemarketer itself placed the call. Accordingly,

11     we revise our rules to clarify that telephone solicitations made by or on behalf of
       tax-exempt nonprofit organizations are not subject to our rules governing

12     telephone solicitations.[42]

13  Kristensen failed to note that the FCC used the word "agent" in the sentence following the portion

14  he quoted. Moreover, district courts in the Ninth Circuit have regularly applied traditional agency

15  principles to claims under 47 U.S.C. § 227(b).[43]

16      Kristensen argues that the Ninth Circuit held in *Greenberg v. Sala*[44] that the particulars of

17  an agency relationship need not be pleaded to survive a motion to dismiss. He correctly describes

18  *Greenberg*'s holding, but *Greenberg*'s ongoing validity is highly doubtful under the current

19  pleading regime established by the Supreme Court in *Iqbal* and *Twombly*. The Western District

20  of Washington recently rejected the same argument that Kristensen makes here.[45] Although the

21

---

22      [40] *See McMaster v. U.S.*, 731 F.3d 881, 891–93 (9th Cir. 2013) (citing *Chevron v. Natural Res.
    Def. Council*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

23      [41] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10

24  F.C.C.R. 12391 (1995) [the "1995 FCC Ruling"].

        [42] 1995 FCC Ruling, 10 F.C.C.R. at 12397.

25
        [43] *E.g., Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012); *In re Jiffy Lube

26  Int'l Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1257 (S.D. Cal. 2012); *Kramer v. Autobytel, Inc.*, 759 F.
    Supp. 2d 1165, 1168, 1171 (N.D. Cal. 2010).

27      [44] 822 F.2d 882 (9th Cir. 1987).

28      [45] *Thornes v. IMB Lender Bus. Process Servs., Inc.*, 2011 WL 677428 (W.D. Wash. 2011).

1 precise details of the agency relationship need not be pleaded to survive a motion to dismiss,

2 sufficient facts must be offered to support a reasonable inference that an agency relationship

3 existed.[46]

4      "The general principles of the federal common law of agency have been formulated

5 largely based on the Restatement of Agency."[47]

6      The principles of agency law . . . are well settled: [a]ctual authority consists of
powers which a principal directly confers upon an agent, as well as those the

7      principal causes or permits the agent to believe he or she possess. . . . Apparent
authority focuses on third parties. It arises when a third party reasonably believes

8      that the putative agent had authority to act on behalf of the principal and that belief
can be traced to the principal's own manifestations.[48]

9

10 The *Restatement* also imposes liability on a principal whose agent appoints a subagent to perform

11 the duties that the principal authorized the agent to perform:

12      An agent who appoints a subagent delegates to the subagent power to act on behalf
of the principal that the principal has conferred on the agent. A subagent acts

13      subject to the control of the appointing agent, and the principal's legal position is
affected by action taken by the subagent as if the action had been taken by the

14      appointing agent. Thus, a subagent has two principals, the appointing agent and
that agent's principal.[49]

15

16      The 2013 FCC Ruling recognized that an agency relationship could arise by ratification.[50]

17 "[A] seller may be liable for the acts of another under traditional agency principles if it ratifies

18 those acts by knowingly accepting their benefits."[51] "A person ratifies an act by (a) manifesting

19 assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable

20 assumption that the person so consents."[52] Notably, "the principal's assent need not be

21

22      [46] *See Iqbal*, 556 U.S. at 696.

23      [47] *Doe I v. Unocal Corp.*, 395 F.3d 932, 972 (9th Cir. 2002), *on reh'g en banc*, 403 F.3d 708 (9th Cir. 2005).

24      [48] *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011) (citing 2A C.J.S. *Agency* § 133; RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006)).

25

26      [49] RESTATEMENT (THIRD) OF AGENCY § 3.15.

     [50] 2013 FCC Ruling, 28 F.C.C.R. at 6587.

27      [51] *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 4.01).

28      [52] RESTATEMENT (THIRD) OF AGENCY § 4.01(2).

1    communicated to the agent or to third parties whose legal relations will be affected by the
2    ratification."[53]

3         Whether an agency relationship exists is ordinarily a question of fact.[54]

4         ### 3.    Application

5         The FAC pleads sufficient facts to render it plausible that the party who "made" the
6    "call"—i.e., the party who actually sent the text message to Kristensen—was acting as an agent or
7    subagent of LeadPile and/or Click Media.[55]  The Lender Defendants contracted with LeadPile,
8    who in turn contracted with Click Media.  Click Media directed another entity to send a text
9    message to multiple persons.  That message included a link which automatically redirected to a
10   site controlled by Click Media.  Upon completing a loan application on Click Media's site, the
11   consumer was directed to a site owned by LeadPile.  LeadPile then sold the leads to the Lender
12   Defendants.

13        Thus, there was a "downhill" series of contractual relationships starting with the Lender
14   Defendants down through Click Media, and the benefits of the text message (leads for potential
15   payday lending customers) flowed back "uphill" through Click Media and LeadPile to the Lender
16   Defendants.  Kristensen has sufficiently pleaded a plausible agency relationship based on actual
17   authority (arising through contractual relationships), apparent authority (based on a reasonable
18   person's perception of who authorized the sending of the text message), and ratification (based on
19   the apparent benefits received by Click Media and LeadPile).  Kristensen need not plead the
20   identity of every player in the alleged scheme nor every nuance of the relationships among the
21   Defendants; indeed, the information necessary to connect all the players is likely in Defendants'
22   sole possession.[56]

---

24        [53] *Id.* § 4.01 cmt. b.

25        [54] *Nat'l Football Scouting Inc. v. Cont'l Assur. Co.*, 931 F.2d 646, 649 (10th Cir. 1991).

         [55] *See Iqbal*, 556 U.S. at 696.

26
27        [56] *See Charvat v. Allstate Corp.*, ___ F. Supp. 2d ___, No. 13-C-7104, 2014 WL 866377 at *2 (N.D.
     Ill. Mar. 5, 2014); *In re Portfolio Recovery Assocs, LLC, Tel. Consumer Protection Act Litig.*, No. 11-MD-
     2295, 2014 WL 223557 at *3 (S.D. Cal. Jan. 8, 2014); *Jiffy Lube*, 847 F. Supp. at 1258; *Kramer*, 759 F.
28   Supp. 2d at 1171.

1  Kristensen also sufficiently pleads that he did not consent to receive the text message and

2  that the message was sent using an ATDS.

3  Accordingly, LeadPile's and Click Media's motions to dismiss are denied.

4  **B.  Motion for Class Certification**

5  **1.  Legal Standard**

6  To obtain class certification, the plaintiff must prove the threshold requirement of

7  "ascertainability"—that the proposed class's membership can be determined by objective

8  criteria.[57]

9  The plaintiff must next prove that all four requirements of Rule 23(a) and at least one of

10  the three requirements under Rule 23(b) are met.[58]  Although neither the Supreme Court nor the

11  Ninth Circuit has established the proper standard of proof for class certification, this Court

12  follows other district courts within the Ninth Circuit that have applied the preponderance

13  standard.[59]

14  The Court may consider inadmissible evidence to determine class certification.[60]  "On a

15  motion for class certification, the Court makes no findings of fact and announces no ultimate

16  conclusions on Plaintiffs' claims.  Therefore, the Federal Rules of Evidence take on a

17  substantially reduced significance, as compared to a typical evidentiary hearing or trial."[61]

18  Kristensen describes the proposed class as follows:

19

20

21  [57] *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014); *Xavier v. Philip*

22  *Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).

23  [58] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131

24  S. Ct. 2541, 2551 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

25  [59] *See e.g., Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 551 n.88 (C.D. Cal. 2012).

26  [60] *Parkinson v. Hyundai Motor Am.,* 258 F.R.D. 580, 599 (C.D.Cal. 2008) ("Unlike a summary judgment motion under Fed.R.Civ.P. 56, a motion for class certification . . . need not be supported by admissible evidence.")

27

28  [61] *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) (internal quotation marks and citation omitted).

All individuals who were sent a text message from telephone numbers "330-564-6316," "808-989-5389," and "209-200-0084" from December 5, 2011 through January 11, 2012.[62]

## 2. Ascertainability

"In order for a proposed class to satisfy the ascertainability requirement, membership must be determinable from objective, rather than subjective, criteria."[63] The proposed class definition should "describe[] a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description."[64] Determination of class membership should not entail detailed individual inquiries.[65] Similarly, class definitions based on the merits of individual members' claims are not sufficiently definite.[66] The inquiry into class membership must not require holding countless hearings resembling "mini-trials."[67]

Here, objective criteria determine who are class members—all those who were sent a text message from one of three phone numbers during an approximately one-month period. Data from T-Mobile calling lists can be used to identify the individual class members. Prospective plaintiffs can readily identify themselves as class members based on receipt of the text message. Consent is not at issue because the class definition does not turn on consent, and consent is more appropriately addressed under Rule 23(b)(3)'s predominance inquiry. Individual mini-trials will not be necessary to determine who was sent the text message from the relevant phone numbers during the relevant time period. Thus, the ascertainability requirement is met.[68]

---

[62] (Dkt. No. 114 at 4.)

[63] *Xavier*, 787 F. Supp. 2d at 1089 (citing *Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)).

[64] *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 558 (C.D. Cal. 2012).

[65] 3 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2013).

[66] *Id.* § 3:6; *Vandervort*, 287 F.R.D. at 557 ("A class must be ascertainable without inquiring into the merits of the case.").

[67] NEWBERG ON CLASS ACTIONS § 3:6.

[68] *See Vandervort*, 287 F.R.D. at 557–58; *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327, 331 (E.D. Wis. 2012); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 141 (N.D. Ill. 2009).

### 3.   Rule 23(a)

In pertinent part, Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable [numerosity];

(2) there are questions of law or fact common to the class [commonality];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and

(4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule."[69] "The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met."[70]

A district court should certify a class only if the court "is satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been met.[71] "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."[72] But "Rule 23 does not authorize a preliminary inquiry into the merits of the suit for purposes other than determining whether certification [is] proper."[73]

#### a.   Numerosity

Based on evidence Kristensen obtained from T-Mobile, Defendants sent violative text messages *en masse* to 98,779 individuals. Joinder of so many persons would undoubtedly be impractical.[74] Contrary to Click Media's arguments the Court may rely on Kristensen's counsel's

---

[69] *Dukes*, 131 S.Ct. at 2551.

[70] *Marlo v. U.P.S.*, 639 F.3d 942, 947 (9th Cir. 2011).

[71] *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

[72] *Dukes*, 131 S.Ct. at 2551.

[73] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir.2011) (citing *Dukes*, 131 S.Ct. at 2552 n.6).

[74] *See Kavu v. Omnipak Corp.*, 246 F.R.D. 642, 646–47 (W.D. Wash. 2012).

Declaration, which includes a summary of the data obtained from T-Mobile.[75]  Notably, Click Media is the only defendant arguing that numerosity is not met; the other four defendants concede the point.[76]

### b.    Commonality

Commonality is inherently satisfied if Rule 23(b)(3)'s predominance requirement is met.[77]  Predominance requires at least one common question, as does Rule 23(a)(2), but also requires that the common question, or questions, outweigh the noncommon questions.[78]  The Court thus assesses commonality within the predominance inquiry below.

### c.    Typicality

"The test of typicality is whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."[79]  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."[80]  "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."[81]

Kristensen and the purported class members allegedly received identical text messages from the same senders in a specified time period.  This is more than sufficient for typicality.

### d.    Adequacy

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action

---

[75] *See* FED. R. EVID. 1006; *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010); *Parkinson*, 258 F.R.D. at 599.

[76] (Dkt. No. 148 at 9 n.4.)

[77] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997).

[78] NEWBERG ON CLASS ACTIONS § 3:27.

[79] *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted).

[80] *Id.*

[81] *Meyer*, 707 F.3d at 1042 (internal quotation marks and citation omitted).

1   vigorously on behalf of the class?"[82]  "Adequate representation depends on, among other factors,

2   an absence of antagonism between representatives and absentees, and a sharing of interest

3   between representatives and absentees."[83]

4          Kristensen has met his burden of demonstrating he is an adequate class representative.

5   The alleged discovery misconduct is insufficient to defeat Kristensen's adequacy.  There are no

6   indications that Kristensen has any conflicts of interest, and he appears sufficiently motivated to

7   vigorously pursue the interests of absent class members.[84]

8          Defendants do not challenge the adequacy of Edelson PLC as class counsel.

9          **4.     Rule 23(b)**

10         A class action may be maintained if Rule 23(a) is satisfied and if: . . .

11             (3) the court finds that the questions of law or fact common to class
               members predominate over any questions affecting only individual
12             members, and that a class action is superior to other available methods for
               fairly and efficiently adjudicating the controversy.  The matters pertinent to
13             these findings include:

14                 (A) the class members' interests in individually controlling the
                   prosecution or defense of separate actions;
15

16                 (B) the extent and nature of any litigation concerning the
                   controversy already begun by or against class members;

17                 (C) the desirability or undesirability of concentrating the litigation
                   of the claims in the particular forum; and
18

19                 (D) the likely difficulties in managing a class action.[85]

20                 **a.     Predominance**

21         "The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are

22   sufficiently cohesive to warrant adjudication by representation."[86]  "The focus is on the

23

24         _____

           [82] *Ellis*, 657 F.3d at 985 (internal quotation marks and citations omitted).

25         [83] *Id.*

26         [84] *See* NEWBERG ON CLASS ACTIONS § 3:54.

27         [85] FED. R. CIV. P. 23(b)(3).

           [86] *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009)
28   (internal quotation marks and citation omitted).

relationship between the common and individual issues."[87] "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."[88]

*Newberg on Class Actions* articulates a practical, two-step inquiry.[89] First, the court characterizes the issues necessary to resolve the merits as either common or individual.[90] An issue is common if (1) it is susceptible to generalized, class-wide proof; or (2) if the same evidence will suffice for each member to make a prima facie showing of that issue.[91] An issue is individual if members of a proposed class will need to present evidence that varies from member to member.[92] This first step amounts to an analysis of commonality under Rule 23(a)(2).

Second, the court must determine if the common issues predominate. The analysis is pragmatic and is more qualitative than quantitative.[93] Common questions do not predominate if the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings.[94]

Kristensen correctly identifies several common issues that will generate common answers applicable class-wide: (1) whether the equipment used to send the text messages is an ATDS, as defined by statute; (2) whether Defendants are vicariously liable for the text messages; and (3) whether the class members expressly consented to receive the text messages.[95]

---

[87] *Id.*

[88] *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

[89] NEWBERG ON CLASS ACTIONS § 4:49.

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.* §§ 4:49, 4:51.

[94] *See id.* § 4:50 (internal quotation marks and citation omitted).

[95] *Dukes*, 131 S. Ct. at 2551 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (internal quotation marks and citation omitted, emphasis in original)).

1      As set forth above, vicarious liability turns on the federal common law of agency and can

2  arise from actual authority, apparent authority, or ratification. Actual authority depends only on

3  relationships among the Defendants. Ratification depends on Defendants' post-message behavior

4  without concern for any conduct by the class members. Apparent authority depends on whether a

5  reasonable person would believe that the sender of the text messages, or the person that caused

6  the text messages to be sent, had authority to act on behalf of Defendants.[96] Because the inquiry

7  is limited to how a reasonable person would perceive the text message at issue, there is no need to

8  determine how individual class members perceived the text message or the successive web pages

9  they may have visited. Agency can be resolved on a class-wide basis.

10      The parties dispute whether consent is an element of the prima facie case or an affirmative

11  defense, but, as the Fifth Circuit has held, that issue is irrelevant for class certification.[97]

12  Kristensen's burden at the class certification phase is to "advance a viable theory employing

13  generalized proof to establish liability with respect to the class involved."[98] If consent is an

14  element of the prima facie case, as *Meyer* instructs,[99] Kristensen must prove that lack-of-consent

15  can be addressed with class-wide proof.[100] If Kristensen is correct that consent is an affirmative

16  defense, then he must prove that he can defeat Defendants' consent argument with class-wide

17  proof. The practical effect is the same: for purposes of class certification, Kristensen must prove

18  that consent, or the lack thereof, can be resolved "on evidence and theories applicable to the

19  entire class."[101]

---

[96] *See In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d at 1167–68.

[97] *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008).

[98] *Gene And Gene*, 541 F.3d at 328.

[99] *Meyer*, 707 F.3d 1036.

[100] *Fields v. Mobile Messengers Am., Inc.*, No. C-12-05160, 2013 WL 6073426 at *4 (N.D. Cal. Nov. 18, 2013).

[101] *Stern v. DoCircle, Inc.*, No. SACV-12-2005, 2014 WL 486262 at *8 (C.D. Cal. Jan. 29, 2014).

The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer.[102] This does not necessarily mean that defendants have an affirmative burden to produce evidence of consent to prevail at trial, however. It simply means that courts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given. It also means that courts should afford greater weight to a plaintiff's theory of class-wide proof of lack-of-consent when that theory is entirely unrebutted by the precise type of evidence which could do it greatest harm—evidence of express consent.

Defendants have not submitted any evidence of express consent. Their reliance on James Gee (of AC Referral Systems) and Michael Ferry (of 360 Data Management and Absolute ROI) is misplaced, as neither has personal knowledge whether Kristensen or the other purported class members consented when they visited one of the "hundreds" of websites that Defendants allege were the original sources of the cell phone numbers. In addition, AC Referral did not appear to have a mechanism to verify consent. Finally, the relevant records of AC Referral and 360 Data Management apparently are no longer available.[103] If, as it appears, Defendants can provide no evidence of consent, Defendants will probably lose on this issue regardless of who carries the burden at trial. Class members could provide individual affidavits averring lack of consent, and Defendants would be unable to rebut with anything other than the unfounded testimony of James Gee and Michael Ferry. Reviewing these affidavits would not be unduly burdensome for the Court, especially in light of the alternative of dealing with thousands of individual lawsuits.

Also, AC Referral acquired the cell phone numbers from two sources—360 Data Management LLC and Identity Defender—who in turn obtained the numbers from Absolute ROI. AC Referral sent the text messages, and AC Referral was under contract with defendant Click Media for marketing services. Kristensen correctly argues that, in light of the absence of

---

[102] *See Meyer*, 707 F.3d 1036; *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 108 (N.D. Ill. 2013); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012).

[103] *C.f. Agne*, 286 F.R.D. at 566 n.6 ("[I]t would be unfair to deny class certification because of the potential difficulty of identifying the class members where that difficulty is mostly due to the fact that [the defendant] destroyed the call lists that it used.").

1  evidence from Defendants about consent, a review of these entities' procedures as to obtaining

2  consent should produce a common answer.[104]  Kristensen therefore has advanced a viable theory

3  of class-wide proof of lack-of-consent.

4       If Defendants develop proof of consent that requires burdensome, individualized inquiries,

5  the Court can take remedial measures up to and including decertification.[105]

### b. Superiority

7       To assess superiority, the Court examines the four factors of Rule 23(b)(3)(A)–(D).

### i. Class members' interests in individually controlling the prosecution or defense of separate actions.

10      "Where damages suffered by each putative class member are not large, this factor weighs

11  in favor of certifying a class action."[106]  The $500 statutory damage amount for each violation,

12  even if increased to $1,500 for willful violations, is insufficient to incentivize individual actions.

13  If a possible verdict reaches into the tens of millions of dollars, that is because Congress chose to

14  set a statutory damage amount for each violation and because the class is very large.  The

15  damages amount grows in direct proportion to the class size.  The Court does not perceive any

16  unfairness based on high damages.

### ii. Extent and nature of any litigation concerning the controversy already begun by or against class members.

19      The Court is unaware of any related, ongoing litigation.

### iii. Desirability or undesirability of concentrating the litigation of the claims in the particular forum.

22      Defendants have not challenged the District of Nevada as an improper forum.

---

[104] *See Agne*, 286 F.R.D. at 567; *Kavu*, 246 F.R.D. at 647.

[105] *See Stone*, 2014 WL 486262 at *8; *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013).

[106] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).

|   | |
|---|---|
| 1 | <center>**iv.**      **Likely difficulties in managing a class action.**</center> |
| 2 | The Court does not perceive any difficulties. If any arise, such as individualized inquiries |
| 3 | into consent, the Court can take remedial measures. |
| 4 |          **5.**      **Rule 23(g) — Class Counsel** |
| 5 | Defendants do not challenge Edelson PLC as class counsel. Having performed an |
| 6 | independent review of the materials submitted by Kristensen, the Court approves Edelson PLC as |
| 7 | class counsel. |
| 8 | |
| 9 | **III.**    <u>**CONCLUSION**</u> |
| 10 | In accord with the above, the Court hereby ORDERS: |
| 11 | 1. Click Media's motion to dismiss (Dkt. No. 65) is DENIED. |
| 12 | 2. LeadPile's motion to dismiss (Dkt. No. 67) is DENIED. |
| 13 | 3. Kristensen's motion for class certification (Dkt. No. 113) is GRANTED. |
| 14 | 4. Under Fed. R. Civ. P. 23(c), the following class is certified: |
| 15 16 |      All individuals who were sent a text message from telephone numbers "330-564-6316," "808-989-5389," and "209-200-0084" from December 5, 2011 through January 11, 2012. |
| 17 | 4. Under Fed. R. Civ. P. 23(g), Edelson PLC is appointed as class counsel. |
| 18 19 | DATED this **26**th day of March, 2014. |
| 20 | |
| 21 |                         ANDREW P. GORDON<br>                        UNITED STATES DISTRICT JUDGE |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RICHARD GORDON, individually and )
on behalf of all others similarly situated, )
                                      )      No. 1:14-cv-05848
Plaintiff,                        )
                                      )      Hon. John Z. Lee
     v.                            )
                                      )      Hon. Sidney I. Schenkier
CARIBBEAN CRUISE LINE, INC., a )
Florida Corporation, )
                                      )
      Defendant.             )

**PLAINTIFF RICHARD GORDON'S RESPONSES TO DEFENDANT
CARIBBEAN CRUISE LINE, INC.'S SECOND SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33 and the parties meet-and confer on May 12, 2017, Plaintiff Richard Gordon ("Plaintiff"), by and through his attorneys, provides his Responses To Defendant Caribbean Cruise Line, Inc.'s ("Defendant") Second Set Of Interrogatories ("Interrogatories"), dated April 12, 2017.

**GENERAL RESERVATIONS & STATEMENTS**

1.      Plaintiff reserves the right to move to quash or to seek a protective order on the grounds set forth in any Specific Objections and Responses or on any other basis at some future time.

2.      Plaintiff has not concluded an investigation of the facts related to this case, formal discovery, or preparation for trial. Plaintiff provides these responses without waiving his right to later modify, supplement, or amend as additional information becomes available in the course of discovery, investigation, or preparation for trial.

3.      Plaintiff reserves the right to produce evidence of any subsequently discovered facts, to alter or amend the responses, and otherwise to assert factual and legal contentions in the

1

event that information that is presently in his possession is inadvertently omitted or mistakenly stated herein.

4.      A response by Plaintiff to any specific Interrogatory is not, and shall not be construed as, an admission of the propriety of the specific Interrogatory.

5.      Plaintiff's responses to the Interrogatories are made without waiving: (a) the right to object on the grounds of competency, relevancy, materiality, privilege or other grounds of admissibility of the matters disclosed as evidence for any purpose in any subsequent proceeding in this action or any other action; or (b) the right to object on any ground to other discovery requests involving or relating to the subject matter of these Interrogatories.  Further, to the extent that Plaintiff provides information, he is doing so in an effort to expedite discovery in this action and not as an indication or admission by Plaintiff of relevancy, materiality, or admissibility, and Plaintiff preserves all objections to Defendant's use of such information.

6.      Plaintiff also objects on the basis that Defendant's Interrogatories are compound and go beyond the number of interrogatories permitted by the Federal Rules of Civil Procedure.

## SPECIFIC OBJECTIONS AND RESPONSES

22.      Please list and provide a brief description of every federal or state civil action, arbitration, or quasi-judicial proceeding in which you or Gordon Law Offices, Ltd. was co-counsel for a Plaintiff or party with Lite DePalma Greenberg LLC, and state the total amount of fees received by you or Gordon Law Offices, Ltd. for each case.

**ANSWER:** Plaintiff objects on grounds that this Interrogatory exceeds the scope of discovery permitted by Rule 26(b)(1), because the definition of "you" is overbroad by including Plaintiff's counsel. As to the amount of fees, Plaintiff objects on the basis that such information is subject to a confidentiality agreement, to which Plaintiff is not the only party, and Plaintiff is

prohibited from disclosing such information.

Plaintiff limits his response legal proceedings in which he or Gordon Law Offices, Ltd. ("GLO") was co-counsel with Lite DePalma Greenberg, LLC ("LDG"). Accordingly, Plaintiff states that, in addition to the cases listed in Dkt. 71, Plaintiff was co-counsel with LDG in:

- *McNamara et al. v. Samsung Telecommunications America, LLC et al.*, No. 1:14-cv-01676 *consolidated with* No. 1:14-cv-01946 (N.D. Ill.), which involved allegations of insufficient battery life on Samsung devices. On November 3, 2014, Dkt. 59, the Court granted Samsung's motion to compel arbitration. On August 19, 2015, the plaintiffs filed a notice of voluntary dismissal, Dkt. 61, thereby terminating the case.

- *Moyer v. Michaels Stores, Inc.*, Case No. 1:14-cv-00561 (N.D. Ill.), which involved a data breach. The case was dismissed with prejudice, which was affirmed upon a Rule 59(e) motion. Dkt. 65, 66, 75. Neither Plaintiff nor GLO received any fees.

23.    Please list every case that you or Gordon Law Offices, Ltd. has referred to Lite DePalma Greenberg LLC and every case that Lite DePalma Greenberg LLC has referred to you or Gordon Law Offices, Ltd., and state for each the total amount of attorney's fees recovered and the respective amounts shared by you or Gordon Law Offices, Ltd. and by Lite DePalma Greenberg LLC.

**ANSWER:** Plaintiff objects on grounds that this Interrogatory exceeds the scope of discovery permitted by Rule 26(b)(1), because the definition of "you" is overbroad by including Plaintiff's counsel. Plaintiff interprets "referring cases" to mean cases passed by one firm to another in which the passing firm is not co-counsel. Accordingly, Plaintiff limits his response to

cases referred among him, GLO, and LDG, in which they were not co-counsel, and states there are no such cases. Plaintiff clarifies, however, that LDG recommended him to another firm as local counsel in a state court proceeding in Lake County, Illinois, referenced in Plaintiff's deposition at 67:16-17. Plaintiff does not consider this case responsive to this Interrogatory since the case was not referred by LDG, Plaintiff, or GLO to anyone and Plaintiff certainly is not aware of LDG ever receiving any attorneys' fees as a result of recommending Plaintiff or GLO as local counsel to another firm. Nevertheless, Plaintiff is providing this information to resolve any confusion about the nature of LDG's recommendation of him as local counsel in the matter referenced in Plaintiff's deposition at 67:16-17.

Dated: May 25, 2017
Submitted,

**LITE DEPALMA GREENBERG LLC**

*/s/ Katrina Carroll*
Katrina Carroll
Kyle A. Shamberg
Ismael T. Salam
Email: kcarroll@litedepalma.com
Email: kshamberg@litedepalma.com
Email: isalam@litedepalma.com
211 W. Wacker Drive
Suite 500
Chicago, IL 60606
Phone: (312) 750-1265
Fax: (973) 877-3845

*Attorneys for Plaintiff Richard Gordon
and the Putative Class*

4

## RULE 33(b)(5) VERIFICATION

I, Richard Gordon, hereby verify responses provided in **Plaintiff Richard Gordon's**

**Responses To Defendant Caribbean Cruise Line, Inc.'s Second Set Of Interrogatories** dated

May 25, 2017

Dated: May 25, 2017

Richard Gordon

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby citifies that a true and correct copy of the foregoing was served this 25th day of May 2017 via electronic mail to the following individuals:

Richard W. Epstein
richard.epstein@gmlaw.com
Jeffrey A. Backman
Jeffrey.backman@gmlaw.com
Brian R. Cummings
brian.cummings@gmlaw.com
200 East Broward Blvd.
Suite 1800
Fort Lauderdale, FL 33301
Tel: (954) 491-1120
Fax: (954) 343-6958

Timothy A. Hudson
thudson@tdrlawfirm.com
Tabet DiVito Rothstein
209 South LaSalle Street
7th Floor
Chicago, IL 60604
(312)762-9450

*Attorneys for Defendant Caribbean Cruise Line, Inc.*

*/s/ Katrina Carroll*

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD GORDON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:14-cv-05848 |
| v. | ) ) | Hon. John Z. Lee |
| CARIBBEAN CRUISE LINE, INC., a Florida Corporation, | ) ) ) | Hon. Sidney I. Schenkier |
| Defendant. | ) ) ) | |

**PLAINTIFF RICHARD GORDON'S RESPONSES**
**TO DEFENDANT CARIBBEAN CRUISE LINE, INC.'S**
**SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Richard Gordon ("Plaintiff"), by and through his attorneys, provides his Responses To Defendant Caribbean Cruise Line, Inc.'s ("Defendant") Second Set Of Requests For Production ("Requests"), dated April 12, 2017.

**GENERAL RESERVATIONS & STATEMENTS**

1. Plaintiff reserves the right to move to quash or to seek a protective order on the grounds set forth in any Specific Objections and Responses or on any other basis at some future time.

2. Plaintiff's Responses to the Requests are made without waiving: (a) the right to object on the grounds of competency, relevancy, materiality, privilege or other grounds of admissibility to the introduction of any Response or document as evidence for any purpose in any subsequent proceeding in this action or any other action; or (b) the right to object on any ground to other discovery requests involving or relating to the subject matter of these Requests. Further, Plaintiff's production of documents is done in an effort to expedite discovery in this

action and not as an indication or admission by Plaintiff of relevancy, materiality, or admissibility, and Plaintiff preserves all objections to Defendant's use of such documents.

3.      Any statement that responsive documents will be produced is not a representation that such documents in fact exist, but is intended to mean that, if such documents exist, are responsive, are located after a reasonably diligent search and are not subject to any objection and/or privilege, they will be produced. Such documents will be produced within thirty days of these Responses.

4.      Plaintiff reserves the right to amend, supplement, or correct these Responses if and when he discovers other or additional documents or grounds for further responses and objections.

5.      Plaintiff reserves the right to make any use of, or to introduce at hearing or trial, documents responsive to the Requests discovered subsequent to the date of these Responses, including, without limitation, any documents obtained in discovery in this action.

**SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENTS REQUESTED**[1]

72.      Copies of any and all co-counsel agreements between you or Gordon Law Offices, Ltd. and Lite DePalma Greenberg LLC relating to your joint representation of the Plaintiff in *Lewert et. al v. P.F. Changs Chinese Bistro, Inc.*, Case No. 1:14-cv-4787 (N.D. Ill.) ("*Lewert*"), including but not limited to all fee-sharing agreements.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint

---

[1] Plaintiff has continued the numbering of the Requests from Defendant's First Set Of Requests For Production Of Documents.

prosecution doctrine. Plaintiff limits his response to agreements between him or Gordon Law Offices, Ltd. ("GLO") and Lite DePalma Greenberg, LLC ("LDG") to appear as co-counsel regarding the joint representation of the plaintiff in *Lewert* and states that Plaintiff does not have any responsive documents, but will produce any documents should they come into his possession. Plaintiff further responds by stating that, while there is no written agreement, Plaintiff's expectation with respect to cases in which he or GLO serves as co-counsel with LDG is to be compensated attorneys' fees based on lodestar, per a court-approved award.

73. Copies of any and all retainer agreements relating to the representation of the Plaintiff in *Lewert* by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the retainer agreements in other cases are not relevant to any claim or defense in this litigation, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the attorney-client privilege and work-product doctrine. Plaintiff limits his response to the retainer agreement between Plaintiff, GLO, or LDG and Lucas Kosner, a plaintiff in *Lewert*, and states he will produce responsive documents.

74. Copies of any and all documents reflecting the payment of costs by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC for the Plaintiff in *Lewert*.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff limits

his response to documents sufficient to identify the payment of costs by Plaintiff, GLO, or LDG in *Lewert* and states he has no responsive documents, but will produce documents if they come into his possession.

75. Copies of any and all documents reflecting any payment received by you or Gordon Law Office or Lite DePalma Greenberg LLC for reimbursement of costs paid as co-counsel in *Lewert*, including all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff limits his response to documents sufficient to identify payments received by Plaintiff, GLO, or LDG for reimbursement of costs paid as co-counsel in *Lewert* and states he has no responsive documents, but will produce documents if they come into his possession.

76. Copies of any and all documents reflecting any payment for attorney's fees paid to you or Gordon Law Office or Lite DePalma Greenberg LLC for services rendered as co-counsel in *Lewert*, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, and because it seeks documents neither relevant nor proportional to the needs of this case. Plaintiff limits his response to documents sufficient to identify payment of attorneys' fees to him, GLO, or LDG for services rendered as

co-counsel in *Lewert* and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession.

77.     Copies of any and all co-counsel agreements between you or Gordon Law Offices, Ltd. and Lite DePalma Greenberg LLC relating to your joint representation of the Plaintiff in *Mednick, et al. v. Precor, Inc.*, Case No. 1:14-cv-3624 (N.D. Ill.) ("*Mednick*"), including but not limited to all fee-sharing agreements.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint prosecution doctrine. Plaintiff limits his response to agreements between him or GLO and LDG to appear as co-counsel regarding the joint representation of the plaintiff in *Mednick* and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession. Plaintiff further responds by stating that, while there is no written agreement, Plaintiff's expectation with respect to cases in which he or GLO serves as co-counsel with LDG is to be compensated attorneys' fees based on lodestar, per a court-approved award.

78.     Copies of any and all retainer agreements relating to the representation of the Plaintiff in *Mednick* by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the retainer agreements in other cases are not relevant to any claim or defense in this litigation, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the attorney-client privilege and work-product doctrine. Plaintiff limits

5

his response to the retainer agreement between Plaintiff, GLO, or LDG and Gary Mednick, a plaintiff in *Mednick*, and states he will produce responsive documents.

79.     Copies of any and all documents reflecting the payment of costs by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC for the Plaintiff in *Lewert*.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff further objects because this Request is redundant with Request No. 74. Plaintiff, in good faith, interprets this Request to reference *Mednick*, not *Lewert*. Plaintiff limits his response to documents sufficient to identify the payment of costs by Plaintiff, GLO, or LDG in *Mednick* and states he will produce a report, dated May 23, 2017, of his or GLO's contributions to the litigation fund in *Mednick*. Plaintiff does not have any other responsive documents, but will produce documents if they come into his possession.

80.     Copies of any and all documents reflecting any payment received by you or Gordon Law Office or Lite DePalma Greenberg LLC for reimbursement of costs paid as co-counsel in *Mednick*, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, and because it seeks documents protected by the joint prosecution doctrine

and work-product doctrine. Plaintiff limits his response to documents sufficient to identify payments received by Plaintiff, GLO, or LDG for reimbursement of costs paid as co-counsel in *Mednick* and states he has no responsive documents, but will produce documents if they come into his possession.

81.    Copies of any and all documents reflecting any payment for attorney's fees paid to you or Gordon Law Office or Lite DePalma Greenberg LLC for services rendered as co-counsel in *Mednick*, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, and because it seeks documents neither relevant nor proportional to the needs of this case. Plaintiff limits his response to documents sufficient to identify payment of attorneys' fees to him, GLO, or LDG for services rendered as co-counsel in *Mednick* and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession.

82.    Copies of any and all co-counsel agreements between you or Gordon Law Offices, Ltd. and Lite DePalma Greenberg LLC relating to your joint representation of the Plaintiff in *Keith, et al. v. Ferring Pharmaceuticals, Inc.*, Case No. 1:15-cv-10381 (N.D. Ill.) ("*Keith*"), including but not limited to all fee-sharing agreements.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint

prosecution doctrine. Plaintiff limits his response to agreements between him or GLO and LDG to appear as co-counsel regarding the joint representation of the plaintiff in *Keith* and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession. Plaintiff further responds by stating that, while there is no written agreement, Plaintiff's expectation with respect to cases in which he or GLO serves as co-counsel with LDG is to be compensated attorneys' fees based on lodestar, per a court-approved award.

83. Copies of any and all retainer agreements relating to the representation of the Plaintiff in *Keith* by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the retainer agreements in other cases are not relevant to any claim or defense in this litigation, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the attorney-client privilege and work-product doctrine. Plaintiff limits his response to the retainer agreement between Plaintiff, GLO, or LDG and Ryan and Nicole Keith, plaintiffs in *Keith*, and states he will produce responsive documents.

84. Copies of any and all documents reflecting the payment of costs by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC for the Plaintiff in *Keith*.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff limits his response to documents sufficient to identify the payment of costs by Plaintiff, GLO, or LDG

8

in *Keith* and states he has no responsive documents, but will produce documents if they come into his possession.

85.     Copies of any and all documents reflecting any payment received by you or Gordon Law Office or Lite DePalma Greenberg LLC for reimbursement of costs paid as co-counsel in *Keith*, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff limits his response to documents sufficient to identify payments received by Plaintiff, GLO, or LDG for reimbursement of costs paid as co-counsel in *Keith* and states he has no responsive documents, but will produce documents if they come into his possession.

86.     Copies of any and all documents reflecting any payment for attorney's fees paid to you or Gordon Law Office or Lite DePalma Greenberg LLC for services rendered as co-counsel in *Keith*, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, and because it seeks documents neither relevant nor proportional to the needs of this case. Plaintiff limits his response to documents sufficient to identify payment of attorneys' fees to him, GLO, or LDG for services rendered as

9

co-counsel in *Keith* and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession.

87.     Copies of any and all co-counsel agreements between you or Gordon Law Offices, Ltd. and Lite DePalma Greenberg LLC relating to your joint representation of the Daniel Ripes in *Moyer v. Michaels Stores, Inc.*, Case No. 1:14-cv-00561 (N.D. Ill.) ("*Moyer*") or any other civil action, including but not limited to all fee-sharing agreements.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint prosecution doctrine. Plaintiff limits his response to agreements between him or GLO and LDG to appear as co-counsel regarding the joint representation of the plaintiff in *Moyer* and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession. Plaintiff further responds by stating that, while there is no written agreement, Plaintiff's expectation with respect to cases in which he or GLO serves as co-counsel with LDG is to be compensated attorneys' fees based on lodestar, per a court-approved award.

88.     Copies of any and all retainer agreements relating to the representation of Daniel Ripes in *Moyer* or any other civil action by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the retainer agreements in other cases are not relevant to any claim or defense in this litigation, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks

documents protected by the attorney-client privilege and work-product doctrine. Plaintiff limits his response to the retainer agreement between Plaintiff, GLO, or LDG and Daniel Ripes, a plaintiff in *Moyer*, and states he will produce responsive documents.

89.     Copies of any and all documents reflecting the payment of costs by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC for Daniel Ripes in *Moyer* or any other civil action.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff limits his response to documents sufficient to identify the payment of costs by Plaintiff, GLO, or LDG in *Moyer* and states he has no responsive documents, but will produce documents if they come into his possession.

90.     Copies of any and all documents reflecting any payment received by you or Gordon Law Office or Lite DePalma Greenberg LLC for reimbursement of costs paid as co-counsel in *Moyer* or any other civil action, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff limits his response to documents sufficient to identify

payments received by Plaintiff, GLO, or LDG for reimbursement of costs paid as co-counsel in *Moyer* and states he has no responsive documents, but will produce documents if they come into his possession.

91.     Copies of any and all documents reflecting any payment for attorney's fees paid to you or Gordon Law Office or Lite DePalma Greenberg LLC for services rendered as co-counsel in *Moyer* or any other civil action, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, and because it seeks documents neither relevant nor proportional to the needs of this case. Plaintiff limits his response to documents sufficient to identify payment of attorneys' fees to him, GLO, or LDG for services rendered as co-counsel in *Moyer* and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession.

92.     Copies of any and all co-counsel agreements between you or Gordon Law Offices, Ltd. and Lite DePalma Greenberg LLC relating to your joint representation of the Melissa Nelson in *McNamara v. Samsung Communications America, LLC*, Case No. 1:14-cv-00561 (N.D. Ill.) ("*McNamara*") or any other civil action, including but not limited to all fee sharing agreements.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint

prosecution doctrine. Plaintiff further objects to producing information related to any monies paid to him or GLO as a result of the litigation in *McNamara* because such information is subject to a confidentiality provision to which Plaintiff is not the only party, and Plaintiff is prohibited from disclosing such information. Accordingly, Plaintiff limits his response to agreements between him or GLO and LDG to appear as co-counsel regarding the joint representation of the plaintiff in *McNamara*, and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession, except as to documents relating to the distribution of any fees procured through a settlement because such information, as stated above, would be confidential.

93.     Copies of any and all retainer agreements relating to the representation of Melissa Nelson in *McNamara* or any other civil action by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the retainer agreements in other cases are not relevant to any claim or defense in this litigation, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the attorney-client privilege and work-product doctrine. Plaintiff limits his response to the retainer agreement between Plaintiff, GLO, or LDG and Melissa Nelson, states he does not have any responsive documents but will produce documents if they come into his possession.

94.     Copies of any and all documents reflecting the payment of costs by Gordon Law Offices, Ltd. and/or Lite DePalma Greenberg LLC for Melissa Nelson in *McNamara* or any other civil action.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in the above-captioned case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff limits his response to documents sufficient to identify the payment of costs by Plaintiff or GLO *McNamara* and states he has no responsive documents, but will produce documents if they come into his possession.

95.     Copies of any and all documents reflecting any payment received by you or Gordon Law Office or Lite DePalma Greenberg LLC for reimbursement of costs paid as co-counsel in *McNamara* or any other civil action, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "all documents" is overbroad and neither relevant nor proportional to the needs of the case, and because it seeks documents protected by the joint prosecution doctrine and work-product doctrine. Plaintiff further objects because this Request calls for the production of documents subject to a confidentiality provision, to which Plaintiff is not the only party and further states Plaintiff is prohibited from divulging this information. Plaintiff limits his response to documents sufficient to identify payments received by Plaintiff, GLO, or LDG for reimbursement of costs paid as co-counsel in *McNamara* that are not prohibited from disclosure and states he has no responsive documents, but will produce documents if they come into his possession.

14

96.     Copies of any and all documents reflecting any payment for attorney's fees paid to you or Gordon Law Office or Lite DePalma Greenberg LLC for services rendered as co-counsel in *McNamara* or any other civil action, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:**  Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, and because it seeks documents neither relevant nor proportional to the needs of this case. Plaintiff further objects because this Request calls for the production of documents subject to a confidentiality provision, to which Plaintiff is not the only party and further states Plaintiff is prohibited from divulging this information. Plaintiff limits his response to documents sufficient to identify payments of attorneys' fees to Plaintiff, GLO, or LDG, for services rendered as co-counsel in *McNamara* that are not prohibited from disclosure and states he has no responsive documents, but will produce documents if they come into his possession.

97.     Copies of any and all retainer agreements between you and Lite DePalma Greenberg LLC pertaining to Lite DePalma Greenberg LLC's representation of you in *Gordon v. American Resorts International, Ltd., et al.*, Case No. 1:14-cv-06944 (N.D. Ill.) ("*American Resorts*").

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because it seeks documents that are confidential, because it seeks documents protected by attorney-client privilege and work-product doctrine, and because it seeks documents neither relevant nor proportional to the needs of this case. Plaintiff limits his response to the retainer

15

agreement between him and LDG regarding LDG's representation of him in *American Resorts* and states he will produce responsive documents.

98.     Copies of any and all documents evidencing any settlement payment or other benefit received by you in settlement of your claims in *American Resorts*, including but not limited to any invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because it seeks documents that are confidential, because seeking "all documents" is not relevant and proportional to the needs of the case, and because it seeks documents protected by attorney-client privilege and the work-product doctrine. Plaintiff further objects because this Request calls for the production of documents subject to a confidentiality provision, to which Plaintiff is not the only party and further states Plaintiff is prohibited from divulging this information. Plaintiff limits his response to documents sufficient to identify payments received by Plaintiff pursuant to a settlement in *American Resorts* that are not prohibited from disclosure and states he has no responsive documents, but will produce documents if they come into his possession.

99.     Copies of any and all retainer agreements between you and Lite DePalma Greenberg LLC pertaining to Lite DePalma Greenberg LLC's representation of you in any other federal or state civil action, arbitration, or quasi-judicial proceeding.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the retainer agreements in other cases are not relevant to any claim or defense in this litigation, because the term  "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff(s) in any case, and because it seeks documents

16

protected by the attorney-client privilege and work-product doctrine. Plaintiff limits his response to the retainer agreement between Plaintiff or GLO and LDG in any legal proceeding, other than this litigation and *American Resorts*, and states he does not have any responsive documents, but will produce documents if they come into his possession.

100.    Copies of any and all documents reflecting any payment for attorney's fees paid to Lite DePalma Greenberg LLC for services rendered as your attorneys in any other federal or state civil action, arbitration, or quasi-judicial proceeding not specifically referenced hereinabove, including but not limited to copies of all billings, invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "your" is overbroad by including his counsel, because it seeks documents that are confidential, because seeking "all documents" is not relevant and proportional to the needs of the case, and because it seeks documents protected by attorney-client privilege and the work-product doctrine. Plaintiff limits his response to documents sufficient to identify payments of attorneys' fees to LDG for services rendered as Plaintiff's attorney in other proceedings not referenced above and states he has no responsive documents, but will produce documents if they come into his possession.

101.    Copies of any and all co-counsel agreements between you or Gordon Law Offices, Ltd. and Greenberg LLC relating to the representation of any Plaintiff or party in any other federal or state civil action, arbitration, or quasi-judicial proceeding not specifically referenced hereinabove.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his

17

counsel, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in any case, and because it seeks documents protected by the joint prosecution doctrine. Plaintiff limits his response to agreements between him or GLO and LDG to appear as co-counsel regarding the joint representation of a party and states that Plaintiff does not have any responsive documents, but will produce documents should they come into his possession. Plaintiff further responds by stating that, while there is no written agreement, Plaintiff's expectation with respect to cases in which he or GLO serves as co-counsel with LDG is to be compensated attorneys' fees based on lodestar, per a court-approved award.

102. Copies of any and all documents reflecting any payment for attorney's fees paid to you or Gordon Law Offices, Ltd. or Lite DePalma Greenberg LLC for services rendered as co-counsel for any Plaintiff or party in any other federal or state civil action, arbitration, or quasi-judicial proceeding not specifically referenced hereinabove, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, because the term "Plaintiff" is overbroad by including Plaintiff and any other named-plaintiff in any other case, because it seeks documents that are confidential, and because it seeks documents neither relevant nor proportional to the needs of this case. Plaintiff limits his response to documents sufficient to identify payments of attorneys' fees to him, GLO, or LDG for services rendered as co-counsel with LDG for any party in other proceedings not referenced above and states he has no responsive documents, but will produce documents if they come into his possession. Plaintiff further responds by stating that, while there is no written agreement, Plaintiff's expectation with respect to cases in which he or

18

GLO serves as co-counsel with LDG is to be compensated attorneys' fees based on lodestar, per a court-approved award.

103.    Copies of any and all documents, including emails, reflecting communications from you or Gordon Law Offices, Ltd. referring or offering to refer a client to Lite DePalma Greenberg LLC or other attorney at that firm.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, because it seeks documents neither relevant nor proportional to the needs of this case, and because it seeks documents protected by attorney-client privilege and the work-product doctrine. For purposes of this Request, Plaintiff interprets "refer a client" to mean cases passed by Plaintiff or GLO to LDG or another attorney at LDG in which Plaintiff or GLO was not co-counsel. Plaintiff limits his response to non-privileged documents sufficient to identify instances in which he referred a client and states he does not have any responsive documents, but will produce documents if they come into his possession.

104.    Copies of any and all documents reflecting any payment of a referral fee to you or Gordon Law Offices, Ltd. from Lite DePalma Greenberg LLC, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, because it seeks documents neither relevant nor proportional to the needs of this case, and because it seeks documents protected by attorney-client privilege and the work-product doctrine. For purposes of this Request, Plaintiff interprets "referral fee" to mean fees paid to Plaintiff or GLO for cases passed by Plaintiff or GLO to LDG

in which Plaintiff or GLO was not co-counsel. Plaintiff limits his response to non-privileged documents sufficient to identify any referral fees and states he does not have any responsive documents, because he has never been paid a referral fee from LDG, but will produce documents if they come into his possession.

105.    Copies of any and all documents reflecting any payment of a referral fee to Lite DePalma Greenberg LLC, from you or Gordon Law Offices, Ltd., including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, because it seeks documents neither relevant nor proportional to the needs of this case, and because it seeks documents protected by attorney-client privilege and the work-product doctrine. For purposes of this Request, Plaintiff interprets "referral fee" to mean fees paid to LDG for cases passed by LDG to Plaintiff or GLO in which Plaintiff or GLO was not co-counsel. Plaintiff limits his response to non-privileged documents sufficient to identify any referral fees and states he does not have any responsive documents, because he has never paid a referral fee to LDG, but will produce documents if they come into his possession.

106.    Copies of any and all documents, including emails, reflecting communications from Lite DePalma Greenberg LLC or other attorney at that firm referring or offering to refer a client to you or Gordon Law Offices, Ltd.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, because it seeks documents neither relevant

nor proportional to the needs of this case, and because it seeks documents protected by attorney-client privilege and the work-product doctrine. For purposes of this Request, Plaintiff interprets "refer a client" to mean cases passed by LDG, or any attorney employed by LDG, to Plaintiff or GLO, in which Plaintiff or GLO was not co-counsel. Plaintiff limits his response to non-privileged documents sufficient to identify instances in which LDG, or another attorney employed by LDG, referred a client. Plaintiff states that LDG has never referred a client to him or GLO and, hence, there are no responsive documents. Plaintiff further states that there is only one instance in which an attorney employed by LDG referred a client to him or GLO, but that the referral was not done on behalf of LDG; Plaintiff will produce responsive documents as to this referral.

107.    Copies of any and all co-counsel agreements between you or Gordon Law Offices, Ltd. and Siprut, PC relating to the representation of any Plaintiff or party in any federal or state civil action, arbitration, or quasi-judicial proceeding.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because the term "Plaintiff" is overbroad by including both Plaintiff and the named-plaintiff in any case, because it seeks documents not relevant and proportional to the needs of the case, as Siprut PC ("Siprut") does not represent Plaintiff in this case, and because it seeks documents protected by the joint prosecution doctrine. Siprut appears to have entered an appearance in this case *solely* for the purpose of filing a notice of a petition to transfer and consolidate proceeding before the Judicial Panel on Multi-District Litigation and *solely* on behalf of the plaintiffs David Izsak and Sunny Holmes, whom are not plaintiffs in this case. *See* Dkt. 30, 31. Plaintiff limits his response to agreements between him or GLO and Siprut to appear as

co-counsel regarding the joint representation of a party and states that Plaintiff does not have any responsive documents, and will not produce documents on the basis of his objections. Plaintiff further responds by stating that, while there is no written agreement, Plaintiff's expectation with respect to cases in which he or GLO serves as co-counsel with plaintiff class action firms, such as Siprut, is to be compensated attorneys' fees based on lodestar, per a court-approved award.

108.     Copies of any and all documents reflecting any payment for attorney's fees paid to you or Gordon Law Offices, Ltd. or Siprut, PC for services rendered as co-counsel for any Plaintiff or party in any other federal or state civil action, arbitration, or quasi-judicial proceeding, including but not limited to all invoices, copies of checks, payment stubs, and receipts.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "all documents" is overbroad, because the term "you" is overbroad by including his counsel, because it seeks documents that are confidential, because it seeks documents neither relevant nor proportional to the needs of this case, as Siprut does not represent Plaintiff in this case, because it seeks documents protected by attorney client privilege, joint prosecution doctrine, and the work product doctrine. Plaintiff limits his response to non-privileged documents sufficient to identify attorneys fees paid to him, GLO, or Siprut for services rendered as co-counsel in any legal proceeding and states that Plaintiff does not have any responsive documents, and will not produce documents on the basis of his objections. Plaintiff further responds by stating that, while there is no written agreement, Plaintiff's expectation with respect to cases in which he or GLO serves as co-counsel with plaintiff class action firms, such as Siprut, is to be compensated attorneys' fees based on lodestar, per a court-approved award.

109.    Copies of any and all retainer agreements between you and Siprut, PC pertaining to Siprut PC's representation of you in any other federal or state civil action, arbitration, or quasi-judicial proceeding.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because it seeks documents neither relevant nor proportional to the needs of this case, as Siprut does not represent Plaintiff in this case, because it seeks documents protected by attorney client privilege and the work product doctrine. Plaintiff limits his response to retainer agreements between him or GLO and Siprut regarding Siprut's representation of Plaintiff or GLO in any legal proceeding and states he has no responsive documents, and will not produce documents on the basis of his objections.

110.    Copies of any and all retainer agreements between you or Gordon Law Offices, Ltd. and any attorney at Siprut, PC pertaining to your or Gordon Law Offices, Ltd.'s representation of any attorney at Siprut, PC in any other federal or state civil action, arbitration, or quasi-judicial proceeding.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel, because it seeks documents neither relevant nor proportional to the needs of this case, as Siprut does not represent Plaintiff in this case, because it seeks documents protected by attorney client privilege and the work product doctrine. Plaintiff limits his response to retainer agreements between him or GLO and Siprut regarding Plaintiff's or GLO's representation of Siprut in any legal proceeding and states he has no responsive documents, and will not produce documents on the basis of his objections.

111.     Copies of any and all documents reflecting the billing, invoicing, or payment of any expenses shared by you or Gordon Law Offices, Ltd. and Lite DePalma Greenberg, LLC relating to the firms' offices at 211 West Wacker Drive, Suite 500, in Chicago, Illinois, including but not limited to all invoices, copies of checks, payment stubs, and receipts for rent, receptionist services, copying machine, facsimile machine, office supplies, clerical staff, coffee service, water service, parking, or printing services.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term "you" is overbroad by including his counsel and because it seeks documents neither relevant nor proportional to the needs of this case. Plaintiff further objects on the basis that this request is not limited in time. Plaintiff limits his response to following documents evidencing the only expenses shared by him or GLO and LDG relating to the firms' offices which relate solely to telephone services: a confirmation report from LDG to GLO regarding the May 18, 2017 payment of the shared telephone line provided by Windstream. Plaintiff further responds by stating that LDG has remitted such payment on a monthly basis from March 2015 to present. Copies of other confirmation reports are substantially identical, except for the initial payment made by LDG to GLO for the carrier's installation of the telephone line in March 2015, for which GLO has no responsive documents.

112.     A copy of your personal calendar for July 28, 2014.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term of "your" is overbroad by including his counsel, because it seeks documents protected by attorney-client privilege and the work-product doctrine. Plaintiff further objects to re-producing documents already in Defendant's possession. Plaintiff limits his response to a copy of his calendar for July 28, 2014, not already in

Defendant's possession, and states he currently does not have responsive documents, but will produce documents if they come into his possession.

113.    Copies of any image or other documents reflecting the date which upon you received the text message underlying the claims in your Complaint.

**RESPONSE:** Plaintiff objects on grounds that Defendant's Request exceeds the scope of discovery permitted by Rule 26(b)(1) because the term of "any documents" is overbroad and because it seeks documents protected by attorney-client privilege and the work-product doctrine. Plaintiff further objects to re-producing documents already in Defendant's possession. Plaintiff limits his response to non-privileged documents, including images, reflecting the date upon which he received Defendant's text message, not already in Defendant's possession, and states that he currently does not any responsive documents, but will produce documents if they come into his possession.

Dated: May 25, 2017                         Submitted,

                                            **LITE DEPALMA GREENBERG LLC**

                                            */s/ Katrina Carroll*
                                            Katrina Carroll
                                            Kyle A. Shamberg
                                            Ismael T. Salam
                                            Email: kcarroll@litedepalma.com
                                            Email: kshamberg@litedepalma.com
                                            Email: isalam@litedepalma.com
                                            211 W. Wacker Drive
                                            Suite 500
                                            Chicago, IL 60606
                                            Phone: (312) 750-1265
                                            Fax: (973) 877-3845

                                            *Attorneys for Plaintiff Richard Gordon*
                                            *and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby citifies that a true and correct copy of the foregoing

was served this 25th day of May 2017 via electronic mail to the following individuals:

Richard W. Epstein
richard.epstein@gmlaw.com
Jeffrey A. Backman
Jeffrey.backman@gmlaw.com
Brian R. Cummings
brian.cummings@gmlaw.com
200 East Broward Blvd.
Suite 1800
Fort Lauderdale, FL 33301
Tel: (954) 491-1120
Fax: (954) 343-6958

Timothy A. Hudson
thudson@tdrlawfirm.com
Tabet DiVito Rothstein
209 South LaSalle Street
7th Floor
Chicago, IL 60604
(312)762-9450

*Attorneys for Defendant Caribbean Cruise Line, Inc.*


*/s/ Katrina Carroll*

# EXHIBIT 9

Page 1

```
1
2              IN THE UNITED STATES DISTRICT COURT
3             FOR THE NORTHERN DISTRICT OF ILLINOIS
4                        EASTERN DIVISION
5
6    RICHARD GORDON, individually   )
7    and on behalf of all others    )
8    similarly situated,            )
9           Plaintiffs,             )
10             vs.                   ) No. 1:14-cv-05848
11   CARIBBEAN CRUISE LINE, INC., a )
12   Florida Corporation, and       )
13   TRAVEL REWARDS, LLC, a Florida )
14   Limited Liability Company,     )
15          Defendants.             )
16
17           Deposition of RICHARD GORDON, taken before
18   GREG S. WEILAND, CSR, RMR, CRR, pursuant to the
19   Federal Rules of Civil Procedure for the United
20   States District Court pertaining to the taking of
21   depositions, at the Seventh Floor, 209 South LaSalle
22   Street, in the City of Chicago, Cook County,
23   Illinois, commencing at 12:01 o'clock p.m., on the
24   4th day of April, 2017.
25
```

Page 2

1

2   PRESENT:

3

4   ON BEHALF OF THE PLAINTIFFS:

5        LITE DePALMA GREENBERG

6        BY: MR. ISMAEL T. SALAM

7             211 West Wacker Drive

8             Suite 500

9             Chicago, Illinois 60606

10            (312) 750-1265

11            E-mail: isalam@litedepalma.com

12

13  ON BEHALF OF THE DEFENDANTS:

14       GREENSPOON MARDER, P.A.

15       BY: MR. JEFFREY A. BACKMAN

16            200 East Broward Boulevard

17            Suite 1500

18            Fort Lauderdale, Florida 33301

19            (954) 764-6660

20            E-mail: jeffrey.backman@gmlaw.com

21

22

23

24

25

Page 3

1

2                          INDEX

3    April 4th, 2017

4    TESTIMONY OF RICHARD GORDON

5                                              PAGE

6    Examination by Mr. Backman .......................5

7    Examination by Mr. Salam ......................201

8    Further Examination by Mr. Backman ..............209

9

10     QUESTIONS THE WITNESS WAS INSTRUCTED NOT TO ANSWER

11                    Page 98, Line 18

12

13                    DEPOSITION EXHIBITS

14   NUMBER              DESCRIPTION              PAGE

15   Exhibit 1      Disclosure Statement            90

16   Exhibit 2      Text message, Bates labeled     160

17                  CCL.000131

18   Exhibit 3      Notice of Service of Process    168

19                  dated 8/4/2014, with

20                  attachments

21   Exhibit 4      Document headed Welcome to      189

22                  CruiseDealToday.com, Bates

23                  labeled CCL.000003

24

25

Page 4

DEPOSITION EXHIBITS (CONTINUED)

| NUMBER | DESCRIPTION | PAGE |
|--------|-------------|------|
| Exhibit 5 | Screen shot, cruisedealtoday.com, Bates labeled CCL.000084 | 194 |
| Exhibit 6 | Screen shot, winner8@mobiletexttale..., Bates labeled CCL.0000080 | 195 |
| Exhibit 7 | Screen shot headed Brian, Bates labeled Jackson 8 | 198 |

1                    R. Gordon

2          MR. BACKMAN:  Go ahead.

3          THE WITNESS:  Does that mean you have no

4   further questions?

5          MR. BACKMAN:  At this moment, until he

6   does his.

7                    EXAMINATION

8   BY MR. SALAM:

9      Q.   Richard, counsel asked you about your

10  duties as a class member.

11         Is it your understanding that you have to

12  represent the best interests of the class?

13     A.   Of course.

14     Q.   And what does that mean generally?

15     A.   To make sure that any result in this case

16  benefits the class as a whole, even if that means

17  that it doesn't benefit me as an individual.

18     Q.   So if you were offered money to settle

19  this case individually would you abandon the

20  interests of the class?

21     A.   No.

22     Q.   If Katrina Carroll, your counsel that

23  counsel asked you about repeatedly during this

24  deposition, approached you with a settlement on a

25  class-wide basis and asked you to sign it and

Page 202

1                          R. Gordon

2    approve it and you thought that it was unfair to the

3    class, would you sign it?

4        A.   No.  My attorney is only here to advise

5    me, not to make decisions for me.

6        Q.   You talked earlier with counsel regarding

7    your work or -- yes, your work with Corboy Demetrio.

8             If you thought that there was another law

9    firm such as Corboy Demetrio who was better suited

10   to represent the interests of the class in this

11   case, would you have chosen them over

12   Lite DePalma Greenberg?

13       A.   Of course.

14       Q.   Counsel also asked you about travel in

15   2014.  I believe you testified that you had traveled

16   with your wife.

17            Did you travel to Ocala, Florida?

18       A.   No.

19            MR. BACKMAN:  Object to form.

20   BY MR. SALAM:

21       Q.   Where did you travel to with your wife in

22   2014?

23       A.   I believe we traveled to Phoenix;

24   Scottsdale, Arizona.  I may have traveled to Boston

25   and likely traveled to Madison, Wisconsin, that

Page 216

1                    R. Gordon

2     STATE OF ILLINOIS  )

3                       )  SS:

4     COUNTY OF C O O K  )

5             The within and foregoing deposition of the

6     witness, RICHARD GORDON, was taken before GREG S.

7     WEILAND, CSR, RMR, CRR, at the Seventh Floor,

8     209 South LaSalle Street, in the City of Chicago,

9     Cook County, Illinois, commencing at 12:01 o'clock

10    p.m., on the 4th day of April, 2017.

11            The said witness was first duly sworn and

12    was then examined upon oral interrogatories; the

13    questions and answers were taken down in shorthand

14    by the undersigned, acting as stenographer; and the

15    within and foregoing is a true, accurate and

16    complete record of all the questions asked of and

17    answers made by the aforementioned witness at the

18    time and place hereinabove referred to.

19            The signature of the witness was not

20    waived and the deposition was submitted to the

21    deponent as per copy of the attached letter.

22            The undersigned is not interested in the

23    within case, nor of kin or counsel to any of the

24    parties.

25            Witness my signature on this 23rd day of

Page 217

1                          R. Gordon

2      April, 2017.

3

4

       _____

5      GREG S. WEILAND, CSR, RMR, CRR

       License No. 084-003472

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25