# EXHIBIT 1

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTI-DISTRICT LITIGATION**

| | | |
|---|---|---|
| In re: CARIBBEAN CRUISE LINE, INC. | ) | |
| TELEPHONE CONSUMER PROTECTION | ) | MDL No. 2604 |
| ACT (TCPA) LITIGATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

---

**CARIBBEAN CRUISE LINE, INC.'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CONSOLIDATION AND TRANSFER UNDER 28
U.S.C. § 1407**

Defendant Caribbean Cruise Line, Inc. ("CCL") submits this response in opposition to Plaintiffs David Izsak and Sunny Holmes's (collectively "Izsak") Motion for Consolidation and Transfer Under 28 U.S.C. § 1407 (the "MDL Motion"). CCL urges the Panel not to consolidate or transfer these cases to the Southern District of Florida as Izsak requests. While CCL agrees that one case should control (and is in fact currently controlling), multi-district litigation is unnecessary because the first-filed case has progressed the furthest compared to the other cases and the issues are not unusually complex. Moreover, the named plaintiffs and putative class members in the other cases fall within the proposed class defined in the first-filed action.[1] For these reasons, and those discussed below, the first-filed case should control.

---

1.      In other words, these are all really the same case; as opposed to a situation with only "similar" cases with "some" overlapping factual and legal issues.

## I.   INTRODUCTION AND BACKGROUND

This case is the fourth[2] and most recently filed nationwide putative class action against

CCL. In each case the named plaintiffs and class members allegedly received, without consent,

"SMS" text-messages in violation of the Telephone Consumer Protection Act ("TCPA"). The

first-filed of the four cases, *Jackson v. Caribbean Cruise Line, Inc.*[3], pending in the U.S. District

Court in the Eastern District of New York has progressed the furthest compared to the other

cases. Any concerns Izsak expressed in his MDL Motion are allayed by what has already been

accomplished in *Jackson*. Discovery has substantially progressed and is nearly complete, with

the discovery cut-off approaching in mid-February 2015.[4] Months ago Jackson filed a second

amended complaint bringing in the third-party entity that sent the allegedly offending SMS

messages.

---

[2]     The second and third filed cases, both filed in the Northern District of Illinois, have been stayed pending a class determination in the first filed case. This case, the fourth, was administratively closed on December 4, 2014. *Izsak v. CCL*, Case No. 0:14-cv-62231 (S.D. Fla.) Judge Bloom's Order Administratively Closing the Case, DE: 21, attached hereto as Exhibit "1" ("Bloom's Order Closing Izsak"). It was on the eve of Plaintiffs' deadline to respond to CCL's Motion to Stay in *Izsak* that their lawyers filed the MDL Motion.

[3]     DE: 1-4, pg. 11.

[4]     DE: 1-4, pg. 6, *referencing* DE: 32, attached hereto as Exhibit "2" ("Initial Conference in Jackson"). The level of activity that has occurred, and the management and control undertaken by Judge Spatt and Magistrate Judge Tomlinson in *Jackson*, cannot be understated. Judge Tomlinson has controlled the case management and discovery of this case since inception. The parties have appeared before her several times for status conferences and hearings, as well as conducted multiple telephonic status conferences in between the in-person appearances. Since Jackson filed on April 18, 2014, Judge Tomlinson has kept the parties on a tight discovery track, has resolved competing motions to compel discovery, has resolved motions to authorize service of third party subpoenas, and has set schedules for the completion of discovery along with other matters relating to Defendant Adsource. The parties have exchanged Rule 26 Disclosures, have served multiple sets of written discovery (requests for production, interrogatories, requests for admissions), have served various responses, amendments and supplements to the respective sets of written discovery, have engaged in meet-and-confers to resolve disputes and have brought the unresolved disputes to the attention of the court (and have already received rulings on those issues). The Plaintiff's deposition has been taken. A class certification briefing schedule should issue shortly.

*In re: CCL*
*Opposition to Plaintiffs' Motion*
*For Consolidation and Transfer*

In contrast, two of the remaining three cases, *Gordon* and *Iosello,*[5] filed in United States District Court for the Northern District of Illinois, are presently stayed pending the outcome in *Jackson.*[6] Moreover, in *Izsak,* the last-filed case – the case seeking MDL treatment, district court Judge Beth Bloom in connection with CCL's fully-briefed motion for stay, entered an Order on December 4, administratively closing the case.[7] So, at the moment, only *Jackson* in the Eastern District of New York is an "active" case.[8] On the facts here, the MDL Motion fails to establish the statutory factors or necessary elements to support consolidating and transferring this minimal number of stayed cases.[9] Even if it did, the cases would have to be consolidated and transferred to the most appropriate court in the Eastern District of New York, where *Jackson*, the first-filed and most progressed case, is being heard by a senior district court judge and an active Magistrate.

## II.  CONSOLIDATION WILL NOT PROMOTE THE JUST AND EFFICIENT CONDUCT OF THESE FOUR CASES

---

5.      DE: 1-5, pg. 6; DE: 1-6, pg. 5. In those cases, the plaintiffs sought to represent two groups that allegedly received unlawful SMS messages (i.e. a nationwide class action and citizens of Illinois, respectively). The same lawyers are representing the plaintiffs in the *Jackson* and *Iosello* cases.

6.      DE: 1-5, pg. 4, *referencing* DE: 29, attached hereto as Exhibit "3" ("Gordon Stay Order"); DE: 1-6, pg. 4, *referencing* DE: 21, attached hereto as Exhibit "4" ("Iosello Stay Order").

7.      *See* Bloom's Order Closing Izsak ("the parties have seemingly agreed that a stay is warranted . . . the Court shall administratively close this case, which may be reopened when appropriate. . . . The parties are **DIRECTED** to file a joint status report within fourteen (14) days of the MDL Panel's decision in *In re Caribbean Cruise Line TCPA Text Litigation,* MDL No. 14-148 (J.P.M.L.)"); *see also* DE: 1-7, pg. 3, *referencing* DE: 9, attached hereto as Exhibit "5" ("CCL's Motion to Stay"); *Izsak v. CCL*, Case No. 0:14-cv-62231 (S.D. Fla.) Plaintiffs' Opposition to CCL's Motion to Stay, DE: 15, attached hereto as Exhibit "6" ("Izsak Opposition to CCL's Motion to Stay").

8.      DE: 1-7, pg. 4.

9.      *See UNITE HERE LOCAL 355 v. HOLLYWOOD GREYHOUND TRACK, INC., d/b/a Mardi Gras Gaming*, Case No. 08-61655, 2009 WL 4726836 (S.D.Fla.) ("The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket.").

*In re: CCL*
*Opposition to Plaintiffs' Motion*
*For Consolidation and Transfer*

Izsak's Motion identifies four putative nationwide TCPA text-message cases for consolidation, three of which are stayed, two pending the outcome in *Jackson* and the third pending the outcome of the Panel's decision here. So, *Jackson* is the only active case of the four cases where consolidation and transfer to Florida is sought. The Panel has not allowed consolidation when there are only a minimal number of cases,[10] where a stay had been entered[11] or where motions were pending.[12] In *In re Scotch Whiskey*,[13] the Panel explained the standard:

> The two [antitrust] cases are **not**, in our opinion, **exceptional cases sharing unusually complex questions of fact**. If this litigation involved the number of cases generally associated with multidistrict civil treble damage antitrust litigation, the common questions of fact might be sufficient to invoke 1407, *but where, as here, there are a minimal number of cases involved in the litigation the moving party bears a strong burden to show that the common questions of fact are so complex and the accompanying common discovery so time consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses*. These factors do not emerge from the present record.[14]

---

10.    *See, e.g., In re Scotch Whiskey Antitrust Litigation*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (denying consolidation of two cases); *see also Manual for Complex Litigation, Fourth*, § 20.14 (2004). The Panel has made clear that it "will not normally transfer actions to a district in which no action is then pending and the Panel clearly considers the number of actions pending in various districts to determine the selection case." *The Judicial Panel's Role in Managing Mass Litigation*, SN066 ALI-ABA 249 (2008).

11.    *See, e.g., In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litigation*, 446 F. Supp. 242, 244 (J.P.M.L.1978) (denying consolidation and noting that "[t]he fifth action, pending in the Eastern District of Arkansas, has been stayed pending the resolution of the two Central District of California actions.").

12.    *See, e.g., In re Lehman Equip. Co. Patent Infringement Litig.*, 360 F. Supp. 1402, 1403 (J.P.M.L. 1973)("Since we are advised that the [MSJ] motion is ripe for decision, we are not convinced that transfer of these actions for coordinated or consolidated pretrial proceedings at this time will serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation.").

13.    299 F. Supp. 543 (J.P.M.L. 1969)*; see also* 28 U.S.C. § 1407(a) (consolidation proper only when consolidation "will promote the just and efficient conduct of such actions" and is "for the convenience of parties and witnesses."); *In re Highway Acc. Near Rockville, Connecticut, on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975).

14.    *Id.* at 544 (emphasis added).

4

*In re: CCL*
*Opposition to Plaintiffs' Motion*
*For Consolidation and Transfer*

Here, the *Scotch Whiskey* factors do not emerge on the papers Izsak argues. Izsak did not show

these are exceptional cases sharing unusually complex questions of fact or that the

accompanying discovery will be time-consuming.[15]

**A.     Izsak could not and so did not make an effort to explain the complexity of the
proffered common questions.**

Izsak offers generic common questions, but avoids explaining how these questions are

sufficiently or unusually complex to warrant MDL consolidation.[16] Izsak states:

> ***Each action will require the following core factual inquiries***: 1) CCL's policies,
> procedures, and technological capabilities for texting, or directing its agent to text,
> consumers; and (2) CCL's policies and procedures for obtaining and recording a
> consumer's consent to receive marketing communications on his or her cell
> phone. Because discovery in the Actions will focus substantially on these
> common factual issues, transfer is appropriate under §1407.[17]

Given these proffered common questions and the minimal number of cases involved here,

Izsak had to *explain to the Panel the complexity* of making an "inquiry" into these purported

---

15.     Indeed, Judge Tomlison recently resolved the only pending discovery disputes between the parties and based upon the supplemental exchanges following the Court's rulings, written discovery between the parties appears to be nearing completion.

16.     Plaintiffs cite 25 cases, only one involves alleged text message violations of the TCPA. In addition, the cases cited by Plaintiffs deals with complex issues, *See e.g. In re Airport Car Rental Antitrust Litig.*, 448 F. Supp. 273 (J.P.M.L. 1978) (violations of the Sherman Act by conspiring to restrain trade unreasonably and to monopolize trade in the market), which Plaintiffs did not, and cannot, make in this case. Further, the cases cited by *Izsak* in support of their Motion to Consolidate offer no support for their proposition. The cases cited by Plaintiff are neither factually similar, nor possess a similar procedural posture. First, Plaintiffs cites *In re: Portfolio Recovery Association* and *In re: Convergent*, for support.  However, those cases have five (5) and seven (7) pending cases, respectively. *In re: Convergent Tel. Consumer Prot. Act Litig.*, 981 F. Supp. 2d 1385, 1387 (J.P.M.L. 2013); *In re: Portfolio Recovery Associates, LLC, Tel. Consumer Prot. Act Litig.*, 846 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011). Second, none of these cases have cases that are already stayed pending the first-filed case. *See e.g. In re: Convergent Tel. Consumer Prot. Act Litig.*, 981 F. Supp. 2d at 1387; *In re: Portfolio Recovery Associates, LLC, Tel. Consumer Prot. Act Litig.*, 846 F. Supp. 2d at 1381.

17.     DE: 1, pg. 4-5; (emphasis added). A comparison of the class action allegation in each of the four respective cases shows that none of the alleged "common questions" are unusually complex. *See* DE: 1-4, pg. 13-15; DE: 1-5, pg. 8-10; DE: 1-6, pg. 10-16; DE: 1-7, pg. 7-10.

5

*In re: CCL*
*Opposition to Plaintiffs' Motion*
*For Consolidation and Transfer*

common questions of fact in order to establish that consolidation is necessary to further the purposes of Section 1407(a).[18] Merely identifying purported common questions of fact -- as Izsak does here, is insufficient to support a conclusion that consolidation and transfer are warranted. Indeed, the Panel has made clear that the mere presence of common factual questions is insufficient to justify consolidation, even when the common questions are identical.[19]

A "factual inquir[y]" into CCL's policies and procedures regarding text messaging or CCL's "capabilities for texting" or "directing an agent" to text (whether the inquiry is by written discovery or deposition) is not so complex that consolidation and transfer are necessary as a precondition to asking and getting the answers to the questions. Likewise, CCL's "policies and procedures for "obtaining and recording [TCPA] consent" is not so complex that it demands multidistrict litigation treatment or transfer to the last-filed and stayed case in Florida. Indeed, these "technologies," and "policies and procedures to obtain consent" questions have already been asked and answered by straightforward discovery "inquiries" in *Jackson*.[20]

**B.     Discovery in *Jackson* is substantially complete, and alternatives exist to avoid duplicative discovery or inconsistent rulings.**

---

18.     *In re Scotch Whiskey,* 299 F. Supp. at 544 (where "there are a **minimal** number of cases involved . . . moving party bears a strong burden to show . . . common questions of fact are so complex and the accompanying common discovery so time consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses")(emphasis added).

19.     *See, e.g., In re Truck Acc. Near Alamagordo, New Mexico, on June 18, 1969,* 387 F. Supp. 732, 733 (J.P.M.L. 1975)("Movants contend that these actions arise from the same accident and that Section 1407 treatment is necessary in order to avoid duplication of discovery. Indeed, we recognize the existence of common, if not identical, questions of fact among these actions. Nevertheless, a mere showing that common questions of fact exist amongst the actions for which Section 1407 treatment is proposed is not sufficient, in and of itself, to warrant transfer by the Panel.").

20.     In *Jackson*, the parties conducted discovery and already learned that those issues are not even "issues" to be resolved because Adsource (with consent) not CCL sent the text messages at issue.

Izsak also had to show that discovery will be time-consuming in order to warrant consolidation and transfer.[21] The only argument Izsak makes on this issue is: "The parties in these actions will necessarily engage in duplicative discovery. All plaintiffs will be seeking the same documentation from CCL and will likely request to depose the same parties."[22] Discovery in *Jackson,* however, is substantially complete. Izsak's bare "duplicative discovery" argument does not explain in the face of reality why discovery, which Izsak admits is duplicative and already complete, will "be so time-consuming" that consolidation and transfer is necessary "to further the purposes of Section 1407."[23]

Here, the lawyers in *Jackson* also represent the putative class in *Iosello,* so discovery is already known to the parties in two of the four cases. Moreover, the same judge is presiding over *Iosello* and *Gordon,* so the *Gordon* litigants likewise have access to the discovery, if the Judge presiding over both cases so decides or lifts the stay. Indeed, the Judge stayed both *Iosello* and *Gordon* pending the outcome of class certification in *Jackson*, recognizing that the classes are subsumed in the *Jackson* class, which is why CCL also moved to stay *Izsak*. On these facts, arrangements can be made, as explained in the *Manual for Complex Litigation, Fourth,* to make discovery already completed, even if subject to a confidentiality or protective order, available to other litigants or to establish coordinated and joint depositories for production.[24]

---

21.      *In re Scotch Whiskey*, 299 F. Supp. at 544.

22.      DE 1, pg. 6.

23.      *In re Scotch Whiskey*, 299 F. Supp. at 544. CCL agrees that written discovery would be duplicative because the cases are identical, but those matters have already been resolved by Magistrate Tomlison in *Jackson*. To the extent Izsak is permitted to proceed separately, the lawyers in that case are welcome to coordinate the scheduling of depositions with counsel in Jackson.

24.      *Manual for Complex Litigation, Fourth,* § 20.14 (2004). The argument against consolidation should not be interpreted to mean that CCL wishes to litigate separate cases involving identical issues in different *fora*. Instead, the logical resolution would be for *Izsak* to

7

*In re: CCL*
*Opposition to Plaintiffs' Motion*
*For Consolidation and Transfer*

Izsak's argument also avoids acknowledging the viable alternatives to consolidation and transfer here. For example, counsel may agree with the Judge in *Jackson* to recognize reality and treat *Jackson,* the first-filed case and case that has progressed further than the others, as the "lead case". Moreover, there could be an agreement that rulings in *Jackson* be given presumptive, though not necessarily, conclusive effect in the stayed cases.[25] Even overlooking the stay issue for a moment, there is no reason the federal district court judges presiding over any non-stayed cases cannot coordinate proceedings, including discovery, to avoid or minimize duplicative activity or conflicts. In any case, these and other alternatives show:

> centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation, which essentially involves only two actions pending in two districts. . . . Alternatives to transfer exist that can minimize whatever remaining possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings.[26]

Because suitable alternatives to consolidation and transfer exist, neither Izsak's theoretical concern over duplicative discovery nor his concern about inconsistent rulings poses a problem or militates in favor of consolidation and transfer.

**III.    IF THE PANEL CONCLUDES THAT CONSOLIDATION AND TRANSFER ARE APPROPRIATE, THEN THE EASTERN DISTRICT OF NEW YORK WHERE THE FIRST-FILED *JACKSON* CASE IS PENDING IS THE MOST APPROPRIATE COURT FOR PRETRIAL PROCEEDINGS.**

---

be stayed pending resolution of the first-filed case – as opposed to engaging in the procedural issues surrounding an MDL.

25.     *Manual for Complex Litigation, Fourth,* § 20.14 (2004).

26.     *In re Sumatriptan Succinate Patent Litig.*, 381 F. Supp. 2d 1378, 1378-79 (J.P.M.L. 2005), citing, *In re Eli Lilly and Company (Cephalexin Monohydrate) Patent Litigation,* 446 F.Supp. 242, 244 (J.P.M.L. 1978); *In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litigation,* 446 F. Supp. 242, 244 (J.P.M.L. 1978) (denying consolidation, recognizing that "[a]lternatives to transfer exist", and noting that "[t]he fifth action, pending in the Eastern District of Arkansas, has been stayed pending the resolution of the two Central District of California actions."); *In re Indian Tribes Contract Support Costs Litig.*, 383 F. Supp. 2d 1380, 1381 (J.P.M.L. 2005) ("alternatives to transfer exist that can continue to minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings."); *see also Manual for Complex Litigation, Fourth,* § 20.14 (2004).

8

*In re: CCL*
*Opposition to Plaintiffs' Motion*
*For Consolidation and Transfer*

The Panel uses no single factor to select the transferee district, but considers where the furthest progressed case is located, where discovery has occurred, the experience, skill, caseloads of available judges, where cost and inconvenience will be minimized, the site of the occurrence of the common facts, and where the largest number of cases is pending.[27] The most significant fact weighing *against* consolidation is whether "***discovery is proceeding with a minimum expenditure of judicial energies*** . . . ."[28] Here, Izsak avoided addressing these various factors and argued only that the Southern District of Florida "is the preferable court for consolidation of pretrial proceedings" because it "maintains the most significant connection to this litigation" based upon the fact that "CCL maintains its principal place of business and regularly conducts business in the Southern District of Florida."[29] Izsak's "significant connection" argument, however, is insufficient to justify consolidation and transfer in the Southern District of Florida where *Izsak* -- the last filed, least progressed case is pending.[30]

### A. Discovery in *Jackson* is nearly complete and cuts-off in mid-February 2015.

---

27.     *Manual for Complex Litigation, Fourth,* § 20.131 (2004).

28.     *In re Photocopy Paper*, 305 F. Supp. 60, 62 (J.P.M.L. 1969) ("The number of transferable actions, their location, their lack of complexity, their relative size, and, most significantly, the fact that discovery is proceeding with a minimum expenditure of judicial energies combine to make the immediate transfer of any of these actions inconsistent with the goal of promoting the just and efficient conduct of these actions.").

29.     DE: 1, at pgs. 8-9. Moreover, *Monitronics*, cited by Plaintiffs, actually and ironically supports CCL's alternative argument that the first-filed case in the Eastern District of New York is the best forum if consolidation is determined to be appropriate, especially because the common questions here have already been answered in *Jackson*. *In re: Monitronics Int'l, Inc.,* 988 F. Supp. 2d at 1367 ("We conclude that the Northern District of West Virginia is an appropriate transferee district for this litigation. The first-filed action, which also is the most advanced, is pending in this district. . . . . Further, as Judge Keeley is currently presiding over the most advanced action, she is in a particularly favorable position to structure this litigation so as to minimize delay and avoid unnecessary duplication of discovery and motion practice.").

30.     The argument that the Southern District of Florida is the appropriate forum is weak. Because CCL is a party, "subpoena power" is not an issue. In addition, Plaintiffs have not identified a single third party witness that will be relevant or need to be compelled to appear that is within the jurisdiction of the Southern District of Florida.

20436705v5

Of the cases that Izsak argues must be consolidated and moved to the Southern District of Florida, *Jackson* – the first-filed case – has progressed the furthest. There have been several conferences and hearings (in-person and telephonic) and a somewhat active motion practice (*e.g.*, motions to compel; motions to authorize service of third-party subpoena). The parties have conducted and completed substantial written discovery, serving and responding to multiple requests for production, interrogatories and requests for admissions with minimal expenditure of judicial energies. There have been several amendments to and supplementation of each form of discovery. Documents have been subpoenaed and obtained from non-parties. Jackson has been deposed. The extensive discovery led Jackson to amend his complaint not once, but twice, to include and serve the Canadian third party who allegedly sent the SMS messages. The discovery cut-off, in mid-February 2015, is fast approaching. The Panel has refused to consolidate cases where, as here, discovery is nearing completion and consolidation serves no benefit.

For example, in *Ecuadorian Oil Concession Litig.*,[31] movants argued for consolidation (as Izsak does here) because the actions were virtually identical and involved the same fundamental claim against the defendants.[32] On this basis, movants argued (as Izsak does here) that without centralization "burdensome and duplicative deposition discovery [would] occur."[33] The Panel rejected these arguments ruling:

> All parties represent that extensive document discovery is virtually complete in both actions; and a June 30, 1980 discovery cutoff has been established in the Delaware action. Under these circumstances, centralization of the Florida and Delaware actions could delay the termination of the Delaware action without producing any overriding benefits.[34]

---

31.   487 F. Supp. 1364, 1368 (J.P.M.L. 1980).
32.   *Id.* at 1367-68.
33.   *Id.*
34.   *In re Ecuadorian Oil Concession Litig.*, 487 F. Supp. at 1368.

Consolidation and transfer of *Jackson*, *Gordon* and *Iosello* to Florida, when *Jackson* is making orderly progress and discovery is nearly complete in the Eastern District of New York and *Izsak* just started in the Southern District of Florida, would provide no benefit and would actually delay and impede the process of the overall litigation.[35]

  **B. An experienced senior Judge and Magistrate are presiding in *Jackson* and the case is being litigated by counsel extremely familiar with the legal and factual issues.**

In *Jackson*, Judge Spatt is an able senior judge who has presided over numerous class actions since his appointment in 1989. In addition, from the outset of *Jackson* Magistrate Tomlinson has been intimately involved, has ruled on discovery motions, and has taken an active role in moving the case to the point where discovery is nearly complete. Familiarity and experience with the issues is an important factor the Panel considers in determining where to transfer the cases. So, the Judge and Magistrate's familiarity with and ability to move the putative TCPA *Jackson* class action along itself militates against consolidation with *Izsak* and transfer of the stayed and later filed cases to Florida, where *Izsak*, the last-filed case is pending.[36]

---

35.  *See In re Women's Clothing Antitrust Litig.*, 455 F. Supp. 1388, 1390-91 (J.P.M.L. 1978)("consolidated pretrial proceedings would, we are convinced, disrupt the orderly progress which is being made in the Pennsylvania and New York actions and would result in no overriding benefits to the litigation as a whole."); *see also In re Photocopy Paper*, 305 F. Supp. 60, 61-62 (J.P.M.L. 1969)(same).

36.  *See, e.g., In re Cardiac Devices Qui Tam Litig.*, 254 F. Supp. 2d 1370, 1373 (J.P.M.L. 2003) ("[D]eveloped a familiarity and expertise with the underlying issues presented in this litigation."); *In re: Aetna, Inc., Out-Of-Network UCR Rates Litig.*, 609 F. Supp. 2d 1370, 1371 (J.P.M.L. 2009)("Judge Faith S. Hochberg has been presiding over the action before her since July 2007 and she is well-versed with the issues involved in this litigation; and (2) two other related actions with similar claims against Aetna are also pending before her."); *In re Capital Underwriters, Inc. Sec. Litig.*, 464 F. Supp. 955, 960 (J.P.M.L. 1979) ("Judge Orrick has become thoroughly acquainted with the factual background of all the actions inasmuch as more extensive discovery and other pretrial proceedings have proceeded in the actions before him than in any other action before the Panel. Hence, he is clearly in the best position to supervise this litigation toward its just and expeditious termination."); *In re Sugar Indus. Antitrust Litig.*, 433 F. Supp. 1122, 1124 (J.P.M.L. 1977) ("Judge Boldt has already become acquainted with the facts

11

In *Jackson*, furthermore, both plaintiff and defense counsel have experience handling class action litigation. For example, Jackson's law firm -- Edelman, Combs, Latturner & Goodwin, LLC ("ECLG"), is a self-proclaimed class action law practice founded in 1987. In the approximately twenty seven years of ECLG's existence, the firm has served as class counsel in numerous class actions and is handling two of the four cases Izsak seeks to consolidate here.[37] Likewise, CCL's defense counsel – Greenspoon Marder, P.A. – has a nationwide practice and is defending CCL in each of these four cases and so has substantial experience and familiarity with each case.

As the foregoing shows, consolidation here will not "[r]educe the burden on parties by allowing division of workload among several attorneys."[38] For one thing, Defense counsel is the same in all four cases. As a result, there is no work to be shared amongst defense counsel, and no benefit to consolidation. For another thing, although there are four cases, presently two are stayed and one has a pending motion to stay, and the lead case is substantially progressed, so, spreading the workload to several attorneys on these facts is pointless and provides no benefit.

Izsak offered nothing to show that the cost and inconvenience to the parties, witnesses or lawyers will be minimized in any of these cases if these cases are transferred to Florida. Izsak did nothing to undermine the conclusion that the progress of the *Jackson* case and the knowledge of the lawyers and the experience of the Judge (and Magistrate) in *Jackson* – if consolidation and transfer are warranted – weighs in favor of transfer to Judge Spatt in the Eastern District of New

---

and issues as they apply to three of the four major sugar marketing regions in the nation. In addition, on the basis of the record before us, it appears that the pretrial proceedings in the Northern District of California are somewhat more advanced than those in the Eastern District of Pennsylvania.").

37.     *Jackson v. CCL*, Case No. 2:14-cv-02485, Plaintiff's Letter for Clarification, DE: 67, attached hereto as Exhibit "7."

38.     Judicial Panel's Role in Managing Mass Litigation, SN066 ALI-ABA 249 (2008).

York. Furthermore, Izsak actually demonstrates that transfer to Florida rather that to the Eastern District of New York will impede the progress of this case. Indeed, Izsak claims to be in the dark on issues that *Jackson* already illuminated, so transfer to his lawyers in Florida makes no sense.

For example, Izsak states he is unaware of who actually sent him the text message; "CCL's employees and officers appear to have engaged third parties to send the text messages at issue."[39] The *Jackson* lawyers, however, have already discovered this information (and amended the Complaint to include Adsource Marketing, LLC, a Canadian entity ("Adsource")) and have learned much of the information they requested about the marketing campaign is in Canada.[40] That Izsak's lawyers are fully aware of *Jackson* and want it consolidated with *Izsak,* yet, at the same time argue consolidation and transfer is needed to learn the identity of the third party who sent the text messages -- even though Jackson identified the entity in publicly filed papers -- is most telling and militates against consolidation and transfer to Florida.

As the foregoing shows, consolidation and transfer of *Jackson*, *Gordon* and *Iosello* to Florida where Izsak just filed his case would actually increase the burdens without creating an appreciable benefit to how these putative nationwide TCPA class actions, sharing a common class definition, are litigated.[41] To the extent consolidation and transfer are even remotely appropriate, then *Izsak* needs to be transferred to the Eastern District of New York.

---

39.   DE: 1.

40.   To the extent Adsource enters an appearance, certainly the Eastern District of New York is a more convenient forum to a Canadian entity then is the Southern District of Florida.   Similarly, CCL has appeared several times before Judge Tomlison in the Eastern District of New York without any inconvenience.   Indeed, Judge Tomlison made herself available for an in-person hearing during the named Plaintiff's deposition in order to immediately resolve a dispute that arose.

41.   *In re Women's Clothing Antitrust Litig.*, 455 F. Supp. 1388, 1390-91 (J.P.M.L. 1978)("consolidated pretrial proceedings would, we are convinced, disrupt the orderly progress which is being made in the Pennsylvania and New York actions and would result in no

**IV.  IZSAK HAS ULTERIOR MOTIVES FOR SEEKING CONSOLIDATION AND TRANSFER.**

Izsak has an ulterior motive for requesting for multi-district consolidation. In filing the MDL Motion *Izsak* seeks to avoid application of the first-filed rule. The Panel routinely denies consolidation when it "appears that [plaintiff's] ulterior motive for seeking transfer amounts to an attempted misuse of the statute."[42]

The first-filed rule shows the Eastern District of New York is the proper forum, not the Southern District of Florida. The Panel considers the "First filed Action" a compelling factor when selecting the proper forum.[43] The rule within the Eleventh Circuit is "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."[44] CCL argued the first-filed rule in its Motion to Stay in *Izsak*. Rather than oppose CCL's Motion to Stay by addressing CCL's argument, Izsak (1) filed the MDL Motion seeking to consolidate and transfer all of the earlier filed cases (including those that have been stayed) to Florida; and (2) argued in response to CCL's Motion to Stay in the Southern District of Florida that he agrees to a stay "while the MDL Panel decides what to do with these cases."[45] Izsak's ulterior motives are an attempt to misuse Section 1407(a) and, therefore, these motives

---

overriding benefits to the litigation as a whole."); *see also In re Photocopy Paper*, 305 F. Supp. 60, 61-62 (J.P.M.L. 1969)(same).

42.  *In re Highway Acc. Near Rockville, Connecticut, on Dec. 30, 1972*, 388 F. Supp. 574, 576 (J.P.M.L. 1975).

43.  *In re GMAC Ins. Mgmt. Corp. Overtime Pay Litig.*, 342 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004) ("We note that i) the first-filed and most advanced action is pending there, and ii) this tribunal has the resources available to manage this litigation."); The Judicial Panel's Role in Managing Mass Litigation, SN066 ALI-ABA 249 (2008).

44.  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012) ("The Eleventh Circuit follows the "first-to-file rule.").

45.  Izsak's Opposition to CCL's Motion to Stay, pg. 1-2. Indeed, the proper course of action is to transfer the case to the Eastern District of New York.

*In re: CCL*
*Opposition to Plaintiffs' Motion*
*For Consolidation and Transfer*

undermine any conclusion that consolidation or transfer of *Jackson, Gordon* and *Iosello* to the Southern District of Florida is appropriate. Simply put, consolidation will not advance the just and efficient resolution of these actions despite Izsak's counsel's efforts to try to gain an upper-hand and control over these earlier filed cases.

## V.    CONCLUSION

For the foregoing reasons, Caribbean Cruise Line, Inc. requests that the Judicial Panel on Multi-district Litigation deny Izsak's Motion for Consolidation and Transfer Under § 1407(a). Consolidation will not promote the just efficient conduct of these four cases. If the Panel concludes that consolidation and transfer are appropriate, then the Eastern District of New York, where the First-Filed *Jackson* case is pending, is the most appropriate court for pretrial proceedings.

Dated: December 5, 2014                          Respectfully Submitted,

*/s/Richard W. Epstein*
RICHARD W. EPSTEIN
GREENSPOON MARDER, P.A.
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954-491-1120
Fax: 954-213-0140
richard.epstein@gmlaw.com
*Attorney for CCL*

15

20436705v5

*In re: CCL*
*Opposition to Plaintiffs' Motion*
*For Consolidation and Transfer*

## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION

In re: CARIBBEAN CRUISE LINE, INC.    )
TELEPHONE CONSUMER PROTECTION   )  MDL No. 2604
ACT (TCPA) LITIGATION,             )
                                    )
                                    )
                                    )
                                    )

## SCHEDULE OF ACTIONS

| **Case Caption** | **Court** | **Civil Action No.** | **Judge** |
|---|---|---|---|
| *Brian M. Jackson v. Caribbean Cruise Line, Inc. and Adsource Marketing Ltd.* | U.S. District Court, Eastern District of New York | 2:14-cv-02485 | Arthur D. Spatt |
| *Richard Gordon v. Caribbean Cruise Line, Inc. and Travel Rewards LLC* | U.S. District Court, Northern District of Illinois Eastern Div. | 1:14-cv-5848 | John Z. Lee |
| *Christopher Iosello v. Caribbean Cruise Line, Inc. and Travel Rewards, LLC* | U.S. District Court, Northern District of Illinois Eastern Div. | 1:14-cv-6118 | John Z. Lee |
| *David Izsak and Sunny Holmes. v. Caribbean Cruise Line, Inc.* | U.S. District Court, Southern District of Florida Fort Lauderdale Div. | 0:14-cv-62231 | Beth Bloom |

Respectfully Submitted,

*/s/Richard W. Epstein*
RICHARD W. EPSTEIN
GREENSPOON MARDER, P.A.
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954-491-1120
Fax: 954-213-0140
richard.epstein@gmlaw.com
*Attorney for CCL*

## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION

| | | |
|---|---|---|
| In re: CARIBBEAN CRUISE LINE, INC. | ) | |
| TELEPHONE CONSUMER PROTECTION | ) | MDL No. 2604 |
| ACT (TCPA) LITIGATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

---

### CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing **Defendant's Opposition to Plaintiffs' Motion For Consolidation And Transfer Under 28 U.S.C. § 1407** was served electronically, or in the alternative via U.S. mail, on all parties specified below this 5th day of December, 2014. Specifically, defendant Adsource Marketing, Ltd, who has yet to make an appearance, was sent a copy via U.S. Mail at the following address:

Adsource Marketing, Ltd
305-5670 Spring Garden Road
Halifax, NS Canada B3J 1H6

| COUNSEL IN *JACKSON* ACTION | CLERKS OF COURT |
|---|---|
| ***Counsel for Plaintiff:*** | Douglas C. Palmer |
| Abraham Kleinman | Clerk of Court |
| akleinman@kleinmanllc.com | U.S. District Court, |
| Kleinman, LLC | Eastern District of New York |
| 626 RXR Plaza | 225 Cadman Plaza East |
| Uniondale, NY 11556-0626 | Brooklyn, NY 11201 |
| 516-522-2621 | Thomas G. Burton |
| 888-522-1692 (fax) | Clerk of Court |
| Daniel A. Edelman | U.S. District Court, |
| courtecl@edcombs.com | Northern District of Illinois |
| Cathleen M. Combs | 219 South Dearborn Street |
| ccombs@edcombs.com | Chicago, IL 60604 |
| Tiffany N. Hardy | 312-435-5670 |

| | |
|---|---|
| thardy@edcombs.com<br>Edelman, Combs, Latturner & Goodwin LLC<br>120 S. La Salle Street<br>Suite 1800<br>Chicago, IL 60603<br>(312) 739-4200<br>(312)419-0379 (fax) | Steven M. Larimore<br>Clerk of Court<br>U.S. District Court,<br>Southern District of Florida<br>400 N. Miami Avenue<br>Miami, FL 33128<br>305-523-5100 |

**Counsel for Defendant CCL:**
Jeffrey Backman
jeffrey.backman@gmlaw.com
Greenspoon Marder, P.A.
100 West Cypress Creek Road
Suite 700
Fort Lauderdale, FL 33309
954-491-1120
954-343-6952 (fax)
Shaji Mathew Eapen
seapen@morganlawfirm.com
Morgan Melhuish Abrutyn
651 West Mt Pleasant Avenue
Suite 200
Livingston, NJ 07039
973-994-2500
973-994-3375 (fax)
Richard W Epstein
richard.epstein@gmlaw.com
Greenspoon Marder, P.A.
200 E. Broward Blvd
Suite 1500
Fort Lauderdale, FL 33301
954-491-1120
954-343-6958 (fax)

**Counsel for Adsource Marketing:**
No appearances on file

**COUNSEL IN *GORDON* ACTION**

**Counsel for Plaintiff:**
Katrina Carroll
kcarroll@litedepalma.com
Kyle Alan Shamberg
kshamberg@litedepalma.com
Lite DePalma Greenberg LLC
211 W. Wacker Drive

Suite 500
Chicago, IL 60606
(312) 750-1265
(312)419-0379 (fax)
***Counsel for Defendant CCL:***
Jeffrey Backman
jeffrey.backman@gmlaw.com
Richard W Epstein
richard.epstein@gmlaw.com
Greenspoon Marder, P.A.
200 E. Broward Blvd
Suite 1500
Fort Lauderdale, FL 33301
954-491-1120
954-343-6958 (fax)
Timothy A. Hudson
thudson@tdrlawfirm.com
Tabet DiVito Rothstein
209 South LaSalle Street
7th Floor
Chicago, IL 60604
(312)762-9450

***Counsel for Defendant Travel Rewards:***
Timothy A. Hudson
(See address above)

**COUNSEL IN *IZSAK* ACTION**

***Counsel for Plaintiffs:***
John Allen Yanchunis, Sr.
jyanchunis@forthepeople.com
Morgan & Morgan
Complex Litigation Group
201 N. Franklin Street
7th Floor
Tampa, FL 33602
813-223-5505
223-5402 (fax)

**Joseph J Siprut**
Siprut, PC
17 North State Street
Suite 1600
Chicago, IL 60602-3294
312-236-0000

| | |
|---|---|
| Email: jsiprut@siprut.com<br><br>**Ismael T. Salam**<br>Siprut, PC<br>17 N. State Street<br>Suite 1600<br>Chicago, IL 60602<br>312-236-0000<br>Email: isalam@siprut.com<br><br>***Counsel for Defendant CCL:***<br>Richard Epstein<br>Richard.epstein@gmlaw.com<br>Jeffrey Backman<br>jeffrey.backman@gmlaw.com | |

Respectfully Submitted,

*/s/Richard W. Epstein*
RICHARD W. EPSTEIN
GREENSPOON MARDER, P.A.
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954-491-1120
Fax: 954-213-0140
richard.epstein@gmlaw.com
*Attorney for CCL*