**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD GORDON, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | No. 1:14-cv-05848 |
| Plaintiff, | ) | |
| | ) | Hon. John Z. Lee |
| v. | ) | |
| | ) | |
| CARIBBEAN CRUISE LINE, INC., a Florida Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

**CARIBBEAN CRUISE LINE, INC.'s OPPOSITION TO PLAINTIFF'S COMBINED
RULE 59(e) MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION
ORDER AND TO SUBSTITUTE CLASS REPRESENTATIVE (DE 153)**

*/s/ Jeffrey A. Backman*
Richard W. Epstein
*Admitted Pro Hac Vice*
Fla. Bar No. 229091
Richard.Epstein@gmlaw.com
Jeffrey A. Backman
*Admitted Pro Hac Vice*
Fla. Bar No. 662501
Jeffrey.Backman@gmlaw.com
**GREENSPOON MARDER, P.A.**
200 East Broward Blvd.
Suite 1800
Fort Lauderdale, FL 33301
Tel: (954) 491-1120
Fax: (954) 343-6958

Brian R. Cummings, Esq.
*Admitted Pro Hac Vice*
Fla. Bar No. 25854
brian.cummings@gmlaw.com
**GREENSPOON MARDER, P.A.**
401 E. Jackson Street, Suite 1825
Tampa, FL 33602
Tel: (813) 769-7020

Fax: (813) 426-8582

-and-

Timothy A. Hudson
**TABET DiVITO & ROTHSTEIN, LLC**
209 S. LaSalle Street, Suite 700
Chicago, Illinois 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
Firm No.: 38234
THudson@TDRLAWFIRM.com

*Attorney for Defendant Caribbean Cruise Line, Inc.*

2

## TABLE OF CONTENTS

Table of Contents.......................................................................................... i

Table of Citations......................................................................................... ii

I.      PRELIMINARY STATEMENT. ........................................................1

II.     ARGUMENT ..............................................................................6

      a.     Standard for Motion to Reconsider Non-Final Order .................................6

      b.     Plaintiff Fails to Raise any Manifest Error of Law or Fact in
the Order's Finding that Plaintiff Failed to Satisfy the Predominance
and Superiority Elements for Class Certification .......................................7

            1.    Plaintiff's Claims of Legal Error Are Based on a False Premise and
Constitute Re-Argument of his Motion to Exclude the Langille
Declaration........................................................................7

            2.    The Court Made no Manifest Error of Fact in Reciting Plaintiff's
Counsel's Lack of Diligence in Pursuing Class Discovery .......................14

      c.     Collateral Estoppel Bars Re-litigation of Class Certification, which Has
Been Denied by the Court's Order, and Plaintiff's Conditional Request
to "Substitute" David Izsak as Class Representative Must Be Rejected ...19

      CONCLUSION....................................................................................22

      CERTIFICATE OF SERVICE ............................................................23

## TABLE OF CITATIONS

**Cases**

*Ahnert v. Emp's Ins. Co. of Wausau, Nos.*
10-CV-156, 13-CV-1456, 2018 WL 2048379 (E.D. Wis. May 2, 2018) ...............7

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
906 F.2d 1185 (7th Cir. 1990) ................................................... 7, 18-19

*Birmingham Steel Corp. v. Tennessee Valley Auth.*,
353 F.3d 1331 (11th Cir. 2003) ......................................................19

*Bridgeview Health Center, Ltd. v. Clark*,
2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) ......................................13

*Caisse Nationale De Credit Agricole v. CBI Indus., Inc.*,
90 F.3d 1264 (7th Cir. 1995) .....................................................4, 7

*Chapman v. Wagener Equities*,
2012 U.S. Dist. LEXIS 176857 (N.D. Ill. Dec. 13, 2012) ...................................19

*Cima v. Wellpoint Health Networks, Inc.*,
250 F.R.D. 374 (S.D. Ill. 2008) ................................................6

*Galvan v. Norberg*,
678 F.3d 581 (7th Cir. 2012) ....................................................6

*Jackson v. Caribbean Cruise Line, Inc.*,
Case No. 14-cv-02485-ADS-AKT) .............................................. *passim*

*In re Northshore University Healthcare Antitrust Litigation*,
2018 WL 2383098 (N.D. Ill. March 31, 2018)....................................19

*Jamison First Credit Services, Inc.*,
2013 WL 3872171 (N.D. Ill. July 29, 2013).........................................3

*Knapper v. Cox*,
329 F.R.D. 238 (D. Ariz. 2019). ................................................ 13-14

*Little Caesar Enterprises, Inc. v. Little Caesar Enterprises, Inc.*,
172 F.R.D. 236 (E.D. Mich. 1997) ..................................................19

*Memisovski v. Garner*,
2002 WL 31687665 (N.D. Ill. Nov. 27, 2002) ....................................19

39529789v1

*Mussat v. Global Healthcare Resource, LLC*,
  2013 WL 1087551 (N.D. Illinois, March 13, 2013) .............................................13

*Phillips v. Ford Motor Co.*,
  435 F.3d 785 (7th Cir. 2006) ...............................................................................19

*Publishers Res. Inc. v. Walker-Davis Publ'ns, Inc.*,
  762 F.2d 557 (7th Cir. 1985) ............................................................................ 6-7

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
  281 F.R.D. 327 (E.D. Wis. 2012) .......................................................................13

*Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*,\
  642 F.3d 560 (7th Cir. 2011) ..................................................................................5

*Terry v. Spencer*,
  888 F.3d 890 (7th Cir. 2018) ..................................................................................6

**Other Authority**

Fed. R. Civ. P. 23 ...................................................................................... *passim*

Fed. R. Civ. P. 59(e) .................................................................................. *passim*

Fed. R. Civ. P. 54(b) ..........................................................................................6

Defendant, CARIBBEAN CRUISE LINE, INC. ("CCL"), responds in opposition to Plaintiff's Combined Rule 59(e) Motion for Reconsideration of Class Certification Order and to Substitute Class Representative (DE 153) (the "Motion"), filed by Plaintiff RICHARD GORDON ("Plaintiff").

## I.    **PRELIMINARY STATEMENT**

Instead of filing a Rule 23(f) Petition, Plaintiff comes to this Court asking it to reconsider the order it just entered. He gives the Court no new evidence, he cites no change in law, and he cannot show any manifest error of fact or law by the Court. Indeed, Plaintiff ignores the actual findings of fact and conclusions of law set forth in the Court's 27-page order – focusing on four extraneous facts[1] out of a vast factual record meticulously cited by the Court – to merely re-argue issues he already lost. Despite filing a motion for class certification, a reply brief, and a "sur-reply" brief, having oral argument, and filing notices of supplemental authority and now this Motion, Plaintiff cannot articulate any viable classwide proof that could overcome the individualized issues of consent that predominate in this TCPA texting case. And he has never pursued any discovery from company that actually sent the text messages. There is nothing new, and there was no error. Changing the class representative, where the Court's denial of class certification was premised upon the individualized issues of consent, would be futile. This putative class against this defendant has been litigated now twice over a five-year period, and this Court's order has decided the issues with finality. The Motion should be denied, and a trial set on the merits of Mr. Gordon's claims.

---

[1] *See* Motion, at 10 (setting forth four grounds for reconsideration based upon their own characterization and minimization of their counsel's involvement in other cases, all of which can be discerned objectively from briefs and exhibits previously filed in this case and are unrelated to this Court's substantive findings supporting the denial of class certification).

In accusing this Court of committing a manifest error, Plaintiff mischaracterizes the Court's own findings and misrepresents the evidence actually presented by Plaintiff to address the issue of consent:

> The Court committed manifest error of law in finding that the Langille Declaration, CCL's *only* evidence of consent, constituted 'specific evidence showing that a significant percentage of the putative class consented' rather than 'vague assertions about consent' that were actually disproven by all the remaining record evidence.

*Id*. at 11 [emphasis in original]. To make this specious argument, Plaintiff ignores the plain language in the Memorandum Opinion and Order (DE 148) (the "Order") that he asks this Court to reconsider. In reality, the Court found that CCL provided *records identifying more than 300,000 individuals who consented to receive text messages*,[2] as well as the Langille Declaration[3] describing the online opt-in consent program that generated those records, as specific evidence of consent. Order, at 23. Plaintiff's claim that the validity of these consent records was "affirmatively disproven by Plaintiff's evidence" (Motion, at 2) is ridiculous. As noted in the Order, Plaintiff merely identified three individuals, including Plaintiff, who "appear" to contradict their own consent records, and provided evidence that at least fifty individuals identified in the Leads Lists in 2014 and 2015 were not associated with the corresponding telephone numbers as of 2017. Order, at 23-24. As the Court appropriately concluded:

> Plaintiff's effort to attack the probative value of the Lead Lists with data from individual putative class members only proves CCL's point. Given the Lead Lists and Langille's declaration, individualized factual inquiries will be necessary to determine whether the individuals on the Lead List did, in fact, consent, and those issues will predominate the litigation. And

---

[2] In briefing class certification, CCL has referred to these records as "opt-in lists" because they were furnished by third-party lead generator Adsource Marketing, Ltd. ("Adsource") as records of individuals who consented online to receive a text message marketing CCL's products and who *may* have been sent text messages, while Plaintiff misleadingly referred to them as "text lists." For consistency, CCL shall herein adopt the Court's more neutral nomenclature in the Order and refer to these records as the "Lead Lists."

[3] Decl. Benjamin Langille (Sept. 22, 2014), DE 104-1, at pp. 66-69.

> Plaintiff has not presented a viable approach based on common proof to establish the lack of consent with respect to the class. *Id*., at 24.

Thus, only Plaintiff's bid for class certification has been "affirmatively disproven by Plaintiff's evidence," as his failure to refute CCL's specific evidence of consent justified the Court's denial of class certification in this case.[4] The Court properly denied class certification after conducting a rigorous analysis under Rule 23 based upon substantial record evidence cited in the Order. The Court expressly found that Plaintiff failed to provide evidence to satisfy the Rule 23(b)(3) elements of predominance and superiority, requiring a denial of class certification.

Plaintiff also contends that the Court overstated the scope of Plaintiff's counsel's involvement in a similar, earlier-filed putative class case,[5] which somehow constitutes "plain errors of fact" justifying reconsideration of the Order. But these issues do not matter. Even if the Court accepted the four (4) "facts" on page 10 that Plaintiff believes the Court should use to "alter" its Order, the ultimate conclusions reached by this Court in denying class certification would not change. Whether they "filed" the *Jackson* action does not matter. Whether Mr. Shamberg entered his appearance (as counsel for *Jackson* while employed with the law firm of Lite, DePalma, Greenberg, LLC ("LDG")) a month after *Jackson* was filed, or a year after *Jackson* was filed, does not matter.[6] What LDG now conveniently characterizes as its "limited role" in *Jackson* does not matter.[7] And that Gordon (not LDG) filed a motion to intervene in *Jackson* does not matter. The scope of Plaintiff's counsel's involvement in *Jackson* was not the

---

[4] *See i.e. Jamison v. First Credit Services, Inc.*, 2013 WL 3872171 (N.D. Ill. July 29, 2013) (class certification denied because Defendant provided unrebutted evidence of consent through employee declaration).

[5] *Brian Jackson v. Caribbean Cruise Line, Inc.*, Case No. 14-cv-02485-ADS-AKT (E.D.N.Y).

[6] The statement that LDG, after entering a notice of appearance as counsel of record for Mr. Jackson, "did not represent Mr. Jackson" is absurd. The notice of appearance is all the Court needs to review.

[7] LDG makes these statements now, knowing of course that CCL has not and cannot conduct discovery into these statements, and, even if it could, LDG would certainly claim that their litigation strategy, their communications with Jackson, their communications with co-counsel in *Jackson*, and other litigation-related issues were all protected by either the attorney-client privilege or work product doctrine.

3

issue being addressed by the Court; it was their lack of diligence in pursuing discovery from the entity that actually sent the alleged text messages, Adsource, which was a named defendant in *Jackson*.

The Court correctly noted, and it cannot be refuted, that Plaintiff's counsel entered an appearance in *Jackson* in April 2015[8] to pursue discovery to support class certification in this case, which had been stayed. While counsel of record in *Jackson*, Plaintiff's counsel deposed four representatives of CCL – the only defendant depositions that occurred in *Jackson* – but failed to pursue *any* discovery from Adsource, in *Jackson* or this case, despite having more than two years to do so. As such, each of factual statements from the Order in bullet points on page 7 of the Motion are entirely accurate, notwithstanding Plaintiff's statements to the contrary, and Plaintiff is at best re-arguing class certification, an invalid basis for reconsideration of the Order.[9]

What Plaintiff ignores is the rest of the factual background outlined by the Court on the real issue – discovery as to Langille/Adsource. The simple truth is that after five (5) years of litigating the identical class action against CCL, not a single lawyer from the collective group of Plaintiff law firms involved ever issued a formal legal request to Mr. Langille or Adsource for written discovery or a deposition; not once. These lawyers had every opportunity to do so from April 2015 all the way up and through the present. LDG, in this case, before this Court, was given the opportunity to conduct discovery when the stay in this case was lifted. They chose not to. At oral argument, they were given yet another opportunity to pursue additional discovery, and Mr. Shamburg declined as unnecessary:

---

[8] *See Jackson*, at DE 130-1 (Aug. 22, 2016) (composite exhibit of filings and deposition excerpts reflecting the scope of Plaintiff's counsel's involvement in *Jackson*) (**Exh. "1"**).
[9] *See Caisse Nationale De Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1995) (a motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion").

4

> MR. SHAMBERG: . . . I have said and I still believe that we don't need [more information] in order to meet the class certification standard here.
>
> * * *
>
> THE COURT: You think you have enough.
>
> MR. SHAMBERG: We think we have enough.[10]

There was then additional briefing following the oral argument; again, LDG never asked for an opportunity to depose Mr. Langille. And now, after losing their bid for class certification, they still do not ask. That is the point of the Court's Order's reciting the history of *Jackson* for background, regardless of the scope of counsel's involvement in *Jackson*. In the end, however, what happened in *Jackson* has nothing to do with the Court's conclusion that individualized issues of consent predominate, resulting in the denial of Gordon's Motion for Class Certification.

Lastly, Plaintiff does not ask the Court to reconsider its finding that Plaintiff failed to satisfy Rule 23(a)(4)'s adequacy requirement. Rather, Plaintiff seeks leave to substitute a "new" class representative. However, this request is conditioned entirely upon the Court granting reconsideration and reversing its rulings that Plaintiff failed to satisfy the predominance and superiority elements of Rule (b)(3), a condition that Plaintiff obscures but concedes in a parenthetical comment.[11] Indeed, as it stands, the Court's Order bars re-litigation of class certification for this putative class, as the doctrine of collateral estoppel would preclude a new class representative from re-litigating class issues decided with finality in the Order for this case or any other case. *See Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560, 563-564 (7th Cir. 2011) (order denying class certification on a basis applicable to all putative class members, such as failure to satisfy predominance or superiority elements of Rule 23(b)(3), binds

---

[10] *See* Hrg. Transcr. (Oct. 4, 2017), at 33:11-13; 37:12-15, attached as Exhibit "A" to Plaintiff's Sur-Reply in Support of Class Certification ("Sur-Reply") (DE 133-1).

[11] *See* Motion, at 17 ("Mr. Izsak [proposed new class representative] could then file a renewed motion for class certification (should the Court otherwise grant Plaintiff's instant Rule 59(e) motion)"). Plaintiff's counsel's true motivation should not be ignored – they want a do-over.

5

all class putative members).  Thus, Plaintiff's request to substitute a new class representative is improper, futile, and must be denied, as this Court's Order has decided class certification as to all putative class members with finality.

Accordingly, Plaintiff articulates no credible basis to justify reconsideration of the Order or substitution of a new class representative, and the "combined" Motion must be denied.

## II.     ARGUMENT

### a.  Standard for Motion to Reconsider Non-Final Order

Plaintiff's Motion is procedurally defective in that he seeks reconsideration under Fed. R. Civ. P. Rule 59(e), which provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  No judgment has been entered in this case, and "Rule 59(e) is not the right procedural hook for seeking reconsideration of a nonfinal order." *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018).  However, the Court may exercise its inherent power to review non-final orders at any time prior to final judgment and construe the motion as one for reconsideration of a non-final order under Rule 54(b). *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).  Courts apply the same standard for a motion to amend or alter judgment under Rule 59(e) and a motion to reconsider a non-final order under Rule 54(b). *See Ahnert v. Emp's Ins. Co. of Wausau*, Nos. 10-CV-156, 13-CV-1456, 2018 WL 2048379, at *3-4 (E.D. Wis. May 2, 2018) (collecting cases).

Reconsideration of a non-final order, such as this Court's Order denying class certification, is a matter committed to a court's sound discretion. *Cima v. Wellpoint Health Networks, Inc.*, 250 F.R.D. 374, 386 (S.D. Ill. 2008).  The Seventh Circuit Court of Appeals has cautioned that "motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res. Inc. v. Walker-Davis*

39525897.1

*Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985).  A motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension (…) [s]uch problems rarely arise and the motion to reconsider should be equally rare."  *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).  Accordingly, a motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."  *Caisse Nationale*, 90 F.3d at 1269-70.  Yet this is all Plaintiff does in his Motion.  It must be denied.

b. **Plaintiff Fails to Raise any Manifest Error of Law or Fact in the Order's Finding that Plaintiff Failed to Satisfy the Predominance and Superiority Elements for Class Certification**

1. **Plaintiff's Claims of Legal Error Are Based on a False Premise and Constitute Re-Argument of his Motion to Exclude the Langille Declaration**

Plaintiff previously sought to exclude this Court's consideration of the Langille Declaration, which CCL had listed in a privilege log disclosed to his counsel in 2015 pursuant to a claim of work product privilege.  Counsel in *Jackson* and counsel in this case could have, but never did, contest that designation.[12]  Plaintiff's Motion to Exclude was denied by this Court in an Order entered on September 18, 2018.  DE 143.  Plaintiff never sought reconsideration or rehearing of that Order.  Now, six months later, Plaintiff seeks reconsideration of the Court's

---

[12]  It is simply not true that the Langille Declaration "only surfaced for the first time in opposition to Plaintiff's motion for class certification."  Motion, at 11.  Plaintiff's counsel knows full well that it surfaced many years ago – on May 6, 2015 – when it was conspicuously disclosed, in all caps, as "BEN LANGILLE DECLARATION" in CCL's privilege log.  Plaintiff even included the privilege log as an exhibit to his Motion for Class Certification.  *See* DE113, at Exh. A.

Order denying class certification by grossly mischaracterizing the Court's reliance on the Langille Declaration, and re-arguing his Motion to Exclude.[13]

In his Motion, Plaintiff falsely contends in multiple instances that this Court relied *solely* upon the Langille Declaration in finding that individual issues of consent would predominate at trial, making class certification improper:

- Without the Langille Declaration, "CCL will have *no* evidence to support its defense of consent whatsoever (Motion, at 2) [emphasis in original];

- Calling the Langille Declaration "CCL's *only* evidence of consent" (Motion, at 11) [emphasis in original];

- "[T]he Langille Declaration was the only document CCL submitted to support its consent defense, leading to class certification being denied." (Motion, at n.2);

- "Other than Mr. Langille's say-so, not a single piece of evidence … corroborates CCL's story." (Motion, at 12)

- "Had CCL come forward with any further corroborating evidence, then there could arguably be 'specific evidence'…" (Motion, at 13);

- "Accordingly, this Court manifestly erred in finding that the Langille Declaration created individual issues of consent that will predominate." (Motion at 13); and

- Asking the court to grant reconsideration with respect to "legal errors regarding the statements made in Mr. Langille's declaration and the weight accorded to it, the only 'evidence' CCL has of consent on the predominance inquiry." (Motion, at 18).

As a threshold matter, the Langille Declaration clearly is evidence that consent was provided for all text messages sent by Adsource, and it was properly considered by the Court. Plaintiff has never refuted it, other than disputing his individual consent record and individual consent records of a few other plaintiffs, and noting disparities between names from 2014 and telephone numbers from 2017 in some 50 consent records randomly sampled by his attorneys from the more than 300,000 individuals identified in the Lead Lists. The fact that Plaintiff

---

[13] *See* Motion, at 11 (complaining about the timing of CCL's disclosure of the Langille Declaration, and arguing "[t]his result is untenable").

39525897.1

otherwise acknowledges, and relies upon, the record evidence of more than 300,000 individuals in the Lead Lists to make his arguments that a class even exists reflects the duplicity of his contention in his Motion that the Langille Declaration is the sole evidence of consent.  When it serves his purpose, Plaintiff simply pretends the Lead Lists do not exist.  Regardless, the Court considered all of this.  The Court did not make a credibility determination; nor did it make any factual findings.  Indeed, the Court considered *all* of the evidence of consent, including Plaintiff's evidence, and as a result, concluded that there are individualized issues that would need be resolved for each putative class member such that class certification is inappropriate.

Ironically, however, Plaintiff previously argued that the *Lead Lists (as opposed to the Langille Declaration) were CCL's only evidence of consent* in his Motion for Class Certification (DE 94), and Reply Brief (DE 114):

- "The only evidence to substantiate its consent defense is an Excel spreadsheet that CCL received from Langille…" and "CCL asserts that this spreadsheet is an opt-in list of users who gave consent to receive texts." (Mot. for Class Cert., at 7):

- CCL cannot meet its burden to show consent here, because the only evidence of consent is the Text List [Lead Lists], which is no proof of consent at all."  (*Id*., at 29);

- The only evidence CCL offers to support its consent-related argument are the Text Lists [Lead Lists]"; Reply Brief, at 11.

So which is it – does Plaintiff contend that the "only" evidence of consent provided by CCL is the Langille Declaration, or the Lead Lists?  In reality, CCL presented substantial evidence to support its defense of consent, including the Langille Declaration, the Lead Lists of opt-ins provided by Mr. Langille and furnished to the Court by both CCL and Plaintiff,[14] the

---

[14] DE 94-8; DE 114-2, at Exh. 1.

Declaration of Jennifer Poole,[15] the deposition testimony of Jennifer Poole,[16] and e-mail correspondence from Mr. Langille.[17] Indeed, in denying Plaintiff's Motion to Exclude the Langille Declaration, the Court noted that "the substance of Langille's declaration is consistent with the emails that CCL provided to Plaintiff during discovery." DE 143, at 3. Most notably, in the Order, this Court expressly identified both the Langille Declaration *and* the Leads Lists as specific evidence of consent. Order, at 23. Thus, Plaintiff's argument that the Court committed manifest error by relying *only* on the Langille Declaration is completely without merit.

Likewise, Plaintiff's argument in the Motion that other evidence of consent was "affirmatively disproven by Plaintiff's evidence" is equally devoid of merit, and constitutes mere re-argument of issues decided by this Court. Of more than 300,000 individuals identified by the Lead Lists as having provided consent, Plaintiff has identified a total of four persons, including himself, who he claims disputed the validity of consent records for their telephone numbers. In his Motion for Class Certification, Plaintiff needed an affidavit and another exhibit just to contest the validity of the name and IP address associated with his cellular telephone in the Lead Lists. He devoted more than seven pages of that Motion, and seven exhibits, to contest the validity of consent records for himself and Brian Jackson, the plaintiff in *Jackson* who dismissed his claims with prejudice and would have been barred from class membership.[18]

The other two individuals claimed by Plaintiff as persons who received text messages without consent were identified after he obtained leave to file a *third* brief on class certification – and after oral argument. On October 17, 2017, Plaintiff filed a "sur-reply" identifying Richard Guiley and David Izsak as additional parties. DE 133. Guiley, who filed a TCPA action against

---

[15] DE 104-1, at pp. 33-34, ¶¶7-13.
[16] DE 104-1, at pp. 59:24-60:8.
[17] DE 104-1, at pp. 47-49.
[18] DE 94, at pp. 5-11, 22-24, Exhs. 5-9, 12-13.

CCL in Ohio state court claiming he received a text message without consent, settled the case in 2014, and provided CCL a complete release of liability for all claims, so he also would have been barred from class membership.[19]  Izsak, who alleged the same putative class as Plaintiff in another civil action against CCL that has been administratively closed since March 2015,[20]  and whom Plaintiff now improperly seeks to "substitute" as a class representative, has provided two declarations filed by Plaintiffs in this case.  Notably, while Plaintiff has identified an opt-in consent record for Izsak's cellular telephone, ***Izsak has not disputed the consent record in either of his declarations***.[21]

The only other evidence Plaintiffs relies upon to support his claim that he affirmatively disproved consent are emails CCL received showing unidentified consumers had complained about receiving unwanted text messages during the time Adsource was providing leads to CCL, and a public records analysis conducted by his own attorneys.  The fact that persons complained to CCL about receiving unwanted text messages proves nothing about consent, as Plaintiff has made no attempt to link those complaints to actual individuals identified in the Lead Lists as having provided consent.  The records analysis consisted of his attorneys self-servingly selecting fifty records from the Leads Lists from 2014 and 2015, searching an unknown public records database in 2017, and concluding the consent records must be invalid because the names and corresponding telephone numbers did not match.  This proves nothing about even those records, let alone the 300,000 additional consent records.  As CCL noted in briefing class certification, Plaintiff failed to disclose what public databases were searched by his attorneys, what they did,

---

[19] *See* Decl. Jeffrey A. Backman, ¶3 (October 31, 2017), DE 135-1, Exh. "A".

[20] *See Izsak v. Caribbean Cruise Line, Inc.*, Case No. 14-cv-62231, at DE 24.

[21] *See* Sur-Reply (DE 133, at p.7), and Decl. Izsak (Oct. 9, 2017) (DE 133-1, at p.113). While Plaintiff argued Izsak's consent record was invalid and he received "unwanted text messages," Izsak made no averment whatsoever in his declaration to refute consent in any way; *see also* Motion, at 12, and Decl. Izsak (March 7, 2019) (DE 153-6).  Again, Plaintiff argued Izsak did not provide consent, but Izsak again made no averment to refute consent or give evidentiary support to Plaintiff's conclusion.

or how they selected the 50 records from the 171,659 other records in the first opt-in list –
including how many other records they searched in which cellular numbers did match the names
in the Lead List – and they never authenticated their sampling results.[22]  Plaintiff subsequently
filed his Reply without even attempting to address these issues or refute CCL's suggestion that
Plaintiff might have cherry-picked fifty bad records from the Lead Lists to reach his conclusions.

> Moreover, the Court noted additional evidentiary defects with Plaintiff's counsel's
analysis of the 50 consent records:

> > Many of the 2017 public records show that persons with the Lead List
> > phone number were first reported as having the numbers after February
> > 2015, which creates a reasonable inference that they were not associated
> > with the phone numbers on the date recorded on the Lead List.  Order, at
> > n. 4.

Plaintiff's Motion fails to address that issue.  Thus, to the extent the discrepancy between names
identified in the Leads Lists from 2014 and 2015 and the names associated with corresponding
telephone number in 2017 resulted from the reassignment of telephone numbers, Plaintiff's
counsel's analysis is meaningless.  In any event, Plaintiff's counsel's small sampling of records
from the Lead Lists proves nothing about the validity of the consent records in this case.  It only
proves that the persons who reportedly opted in and provided consent in 2014 or 2015 were not
listed as subscribers of the corresponding telephone number in 2017 in the undisclosed public
records database searched by Plaintiff counsel.

> As such, Plaintiff has no basis to proclaim that he has provided evidence "affirmatively
disproving" any specific evidence of consent provided by CCL.  He has merely conducted four
individualized inquiries to attack the probative value of four consent records, noted anonymous
complaints about unwanted text messages reported to CCL in emails, and offered an unverified,
unauthenticated, and unreliable public records search by his attorneys of just fifty records.  All of

---

[22] Resp. in Opp. to Mot. for Class Cert., DE 104, at 9.

which are the *same exact arguments he made in his class certification briefs*. As the Court noted in its Order, however, he failed to articulate any "viable approach based on common proof" to address the consent records for the other 300,000 individuals identified in the Lead List, or any of the other specific evidence. Order, at 24. His Motion merely re-hashes his arguments in briefing class certification, which the Court already properly considered in the Order and rejected.

Additionally, Plaintiff provides no new issue of law in his Motion to support his contention that the Court committed a manifest error of law in denying class certification based upon the predominance individualized issues of consent. He cites three cases that are plainly distinguishable, and could have been argued in his prior briefing. Those courts merely found that predominance was satisfied because the defendants showed only that *some* recipients of unsolicited facsimiles *may* have consented, and these issues could be resolved on a classwide basis by reference to the defendants' records.[23] Unlike those cases, Plaintiff defines every putative class member *only* by reference to records of consent from more than 300,000 individuals who *may have received text messages* over a fifteen-month period, and he has no common evidence to show which, if any, of those individuals actually received a text message in the first place, let alone without consent.

The only case cited by Plaintiff subsequent to his prior briefing, which he mischaracterizes as involving "highly similar facts," is also clearly distinguishable. In *Knapper v. Cox*, the Court certified a class of non-customers of the defendant who complained of

---

[23] *See Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327, 338 (E.D. Wis. 2012) (finding common issues predominated in determining defendant's liability for the sending of faxes, and individual issues of consent and established business interest were "minor"); *Mussat v. Global Healthcare Resource, LLC*, 2013 WL 1087551 * 7 (N.D. Illinois, March 13, 2013) (other courts have held that common issue predominate when "some recipients may have given permission to the defendant to send them faxes," citing *Reliable Money Order*); *Bridgeview Health Center, Ltd. v. Clark*, 2011 WL 4628744, * 5 (N.D. Ill. Sept. 30, 2011) (determining whether or not defendant obtained consent to send faxes on two days to persons outside of a twenty-mile radius of Terre Haute, Indiana, raised only minor individualized issues of consent that could be resolved in a class wide basis).

receiving "wrong number" calls. 329 F.R.D. 238, 244-45 (D. Ariz. 2019). The defendant claimed that some of the telephone numbers in its records were incorrectly designated wrong numbers, raising individual issues of consent. *Id.* The Court found that determining whether or not some of the putative class members were truly customers or former customers of defendant who consented to be called was an issue that could be resolved on a classwide basis by reference to the defendant's records, and defendant's evidence showing errors in its own records "is not indicative of consent." *Id.* Unlike in *Cox*, Plaintiff lacks any viable means of addressing consent on a classwide basis, either by reference to CCL's records, which show only its receipt of inbound calls, or from the Text Lists furnished by Adsource in 2015, which only purport to be records of individuals who consented online to receive a text message marketing CCL's products and *may* have been sent text messages.

As such, Plaintiff offers nothing to support his claim of manifest errors of law or other bases for reconsideration, and the Motion must be denied.

### 2. The Court Made no Manifest Error of Fact in Reciting Plaintiff's Counsel's Lack of Diligence in Pursuing Class Discovery

In the Motion, Plaintiff's counsel go to great lengths to distance themselves from the other plaintiff's attorneys in *Jackson*, seeking to deflect responsibility for failing to pursue discovery that was critical to certification of the putative class alleged in that case and, ultimately, in this case. This is re-argument, just like with the issue of consent. It is also completely irrelevant. The parties previously debated the scope of Plaintiff's counsel's involvement in *Jackson* during the status conferences before the Court and in the course of briefing class certification and Plaintiff's Motion to Exclude the Langille Declaration.[24] Indeed, the procedural history of *Jackson* and the inaction, missteps, and lack of diligence in pursuing

---

[24] *See* Resp. in Opp. To Mot. for Class Cert., DE 104, at pp. 7-8; Resp. in Opp. to Mot. to Exclude Langille Decl., DE 118.

discovery from Adsource in that case by all of the attorneys involved, including LDG (as hard as they may try to avoid it) which drew several rebukes of plaintiff's counsel from the magistrate (including after the appearance made by LDG), have been thoroughly discussed and addressed in this case. *See* Annotated Timeline of Discovery Delays (DE 104-1, at pp. 75-78), attached hereto as **Exh. "2"**).

Plaintiff's counsel did not file the original complaint in *Jackson*. CCL agrees. But so what? This is a harmless mistake that had absolutely no bearing on the conclusions reached by the Court in its Order. Plaintiff's counsel tries to seize upon this one statement by drastically understating their involvement in *Jackson* and falsely accusing the Court of making manifest errors of fact, all in the hope of justifying reconsideration of the Order. But no reconsideration is warranted here, as Plaintiff ignores the facts and misses the point of the Order's recital of background facts: (1) discovery from Adsource was "pivotal" to the claims against CCL of a putative class, whether pursued in *Jackson* or in this case; (2) Plaintiff's counsel failed to pursue any discovery from Adsource, in *Jackson* or this case, despite having the opportunity to do so for years; and (3) as a result, Plaintiff sought class certification without any evidence, or prospect of developing evidence, to show Adsource sent text messages on behalf of CCL without consent.

Plaintiff asserts in the Motion that the Order improperly referred to "plaintiff's counsel" without distinguishing between the various counsel involved or recognizing his law firm's "specifically limited role" as counsel in *Jackson*.[25] That limited role, according to the Motion, was to "monitor" *Jackson* and conduct limited discovery on behalf of Plaintiff in this case. If by

---

[25] Of course, this convenient new characterization has not been and cannot be tested. But regardless, LDG was counsel of record for Jackson starting in April 2015. LDG, on behalf of Jackson had no problem taking the only depositions that did in fact occur in that case. They were also party to the email correspondence and the court's orders in the *Jackson* matter relating to the various discovery issues about Adsource. Perhaps most importantly, this Court gave them every opportunity to pursue the discovery never pursued in Jackson; they chose not to. To blame the Court is insulting.

"monitor" they mean travel to Florida to conduct the only defense depositions that took place, then so be it. They also claim that the law firm did not have an attorney-client relationship with the Plaintiff in *Jackson* – a party for whom they entered an appearance. And, incredibly, they contend that the failure to obtain discovery from Adsource in *Jackson* cannot be "imputed" on Plaintiff's counsel. Motion, at 6-8. These revisionist assertions deliberately overlook the actual factual record, both in *Jackson* and in this case.

Plaintiff cannot dispute the following undisputed facts: On April 14, 2015, Plaintiff's counsel here appeared[26] as counsel for plaintiff in *Jackson* to pursue merits-related discovery from CCL *and* Adsource. Nothing in this notice reflected that the attorney, Kyle Shamberg with the law firm of LDG, was entering an appearance for anyone other than Plaintiff Brian Jackson, which thereby created an attorney-client relationship, or that he was appearing in a "specifically limited role."[27] At that time, CCL's counsel was actively assisting Jackson's various attorneys in obtaining the Lead Lists from Adsource, which were ultimately produced to Plaintiff after Plaintiff's counsel appeared.[28] On May 20, 2015, other counsel for the *Jackson* plaintiff circulated a notice purporting to schedule a deposition of Langille at a location in Halifax, Nova Scotia, on June 9, 2015.[29] The email was copied to Kyle Shamberg and Ismael Salam,[30] the same two attorneys for Plaintiff identified in his Motion for Class Certification's Local Rule 37.2

---

[26] *See* Notice of Appearance of Kyle Shamberg (April 15, 2015), at Exh. 1.

[27] *Id.*

[28] Plaintiff's counsel, Kyle Shamberg and Ismael Salam, were immediately included as carbon copy recipients on the email correspondence.

[29] Email from Noah Steimel to CCL's Counsel and Langille, and attachment (May 20, 2015), DE 118-6 (**Exh. "3"**).

[30] Mr. Salam's role in these cases is circuitous. At the time Mr. Shamberg appeared, Mr. Salam was an associate attorney with another firm, Siprut PC, in Chicago, that was representing David Izsak and Sunny Holmes in another similar putative class action that was also stayed. Mr. Salam and attorney Joseph Siprut also entered an appearance in *Jackson* for Brian Jackson. At some point before the dismissal of *Jackson*, Mr. Salam joined Plaintiff's counsel's firm, and he was involved in briefing class certification and attended the hearing on the Motion with Mr. Shamberg. Mr. Salam has since left the firm, withdrawing from this case last year. *See* Minute Entry DE 140 (April 3, 2018) (granting withdrawal).

16

Statement. The proposed notice of deposition sent to Plaintiff's counsel reflected three physical addresses and two email addresses for Adsource and Langille. In reply, CCL's counsel sent emails to Jackson's counsel inquiring if the deposition had been coordinated with Adsource, or a subpoena would be issued, and also directly to Langille (copying all Plaintiff's counsel) inquiring if he intended to appear.[31] Langille replied (to all), stating that he was not available, needed to retain legal counsel, and would "get back to you very soon about new dates for the deposition;" on June 1, 2015, counsel for *Jackson* advised that the deposition would not proceed.[32]

On June 10, 2015, Mr. Shamberg and Mr. Salam, Plaintiff's attorneys in this case, emailed CCL's counsel to coordinate conducting depositions in *Jackson* of CCL's four representatives in Florida, which were ultimately conducted on the dates in the email.[33] Despite Plaintiff's repeated mischaracterizations in the Motion that discovery in *Jackson* was substantially completed by the time his counsel appeared in that case, the depositions of CCL's representatives by Plaintiff's counsel were the only depositions conducted on behalf of the plaintiff in *Jackson*. In deposing one of CCL's representatives, Kyle Shamberg introduced himself as follows: "*I'm Kyle Shamberg. I'm representing the attorney [sic] Brian Jackson* in this case." *See* Exh. 1, at p. 6. This clearly contradicts Plaintiff's claim in the Motion that his counsel had no attorney-client relationship with the plaintiff in *Jackson*.

After deposing CCL's representatives, Plaintiff's counsel took no action to pursue discovery from Adsource, despite having been furnished three physical addresses and two email

---

[31] Email from Jeff Backman to Tiffany Hardy (May 20, 2015), DE 118-7 (**Exh. "4"**); Email from Jeff Backman to Ben Langille (May 21, 2015), DE 118-3 (**Exh. "5"**)
[32] Email from Ben Langille to all counsel (May 26, 2015), and Email from Tiffany Hardy to Jeff Backman (June 1, 2015), DE 118-9 (**Exh. "6"**)
[33] Email from Ismael Salam to Jeff Backman (June 10, 2015), DE 118-10 (**Exh. "7"**); *see* DE 94-2 and DE 94-15 (excerpts of deposition transcripts included as exhibit to Plaintiff's class certification motion).

addresses for Adsource and Langille in May 2015. This utter failure to pursue discovery from Adsource was expressly noted by the Magistrate in *Jackson* in an Order entered on March 31, 2016 – nearly a year *after* Plaintiff's counsel appeared in that case. In the Order, the Magistrate again extended discovery deadlines in the case at Jackson's request:

> [T]here is no indication in the record that Plaintiff has made any attempt to serve a subpoena on Adsource for either the documents or deposition it seeks.[34]

Notwithstanding this rebuke, Plaintiff's attorneys and other counsel representing Jackson never pursued formal process to compel discovery from Adsource. Instead, they emailed CCL's counsel on April 8, 2016 (nearly 10 months after Langille's email), to coordinate a date for the deposition of Adsource, stating they were "preparing to serve a deposition notice on Adsource."[35] Nothing was ever pursued.

After *Jackson* was dismissed in early 2017, and the stay was lifted in this case, the parties (with Plaintiff represented by LDG) submitted a Joint Report on Additional Discovery as required by the Court on March 8, 2017. In the Report, Plaintiff noted that he was *electing **not** to conduct "international discovery of Ben Langille/Adsource under Canadian civil law."* Plaintiff DE 61, at p. 3. Plaintiff filed his Motion for Class Certification two months later.

The Court denied class certification because individualized issues of consent predominate and the class representative is inadequate. Those findings were not premised on the trivial misstatement that LDG filed *Jackson*. That misstatement certainly does not reflect that "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension," *Bank of Waunakee*, necessitating the rare instance in which reconsideration would be warranted.

---

[34] *Jackson*, at DE 118 (**Exh. "8"**).
[35] Email from Tiffany Hardy to Jeff Backman (April 8, 2016), DE 118-13 (**Exh. "9"**).

906 F.2d at 1191. To suggest it has is, frankly, insulting to the Court. Rather, the Court's analysis in the Order is based upon undisputed procedural facts reflecting Plaintiff's counsel's utter lack of diligence in seeking discovery Adsource, the party that sent the text messages underlying this action, while counsel of record in Jackson and also in pursuit of the class certification request in this very case. *Indeed, any failure to do so in Jackson and blame that failure on LDG's co-counsel in that case was absolutely waived when the stay in this case was lifted and LDG, by choice, voluntarily elected not to pursue that discovery despite being provided multiple opportunities to do so by this Court.* The Order contains no manifest error of fact justifying reconsideration.

### c. Collateral Estoppel Bars Re-litigation of Class Certification, which Has Been Denied by the Court's Order, and Plaintiff's Conditional Request to "Substitute" David Izsak as Class Representative Must Be Rejected

Plaintiff requests to substitute David Izsak as a class representative to address the Court's finding in the Order that Plaintiff was an inadequate class representative, due to his business and personal ties with Plaintiff's counsel. Thus, rather than asking the Court to reconsider its finding that Plaintiff failed to satisfy Rule 23(a)(4)'s adequacy requirement, Plaintiff seeks to bring in a new class representative who he contends would be adequate. But to allow this would be futile and prejudicial. In reality, Plaintiff's counsel – not Plaintiff – just wants a do-over. But the inadequacy of the named Plaintiff, or counsel, is secondary to the Court's finding that Rule 23(b)(3) is not met.

Given that adequacy was only one of three elements for class certification under Rule 23 that Plaintiff failed to satisfy, his request to substitute a new class representative is conditional upon this Court granting reconsideration and reversing its ruling that Plaintiff failed to establish the predominance and superiority elements of Rule 23(b)(3). Otherwise, a new class

representative is barred by the doctrine of collateral estoppel from re-litigating issues of class certification that are applicable to all class members:

> If, after concluding that the plaintiff would be an adequate representative of the class, the court denies certification for a reason that would be equally applicable to any later suit – for example, that the supposed victims are too few to justify class litigation, that a common questions does not predominate, or that person-specific issues would make class treatment unmanageable – then members of the asserted class are bound by that decision.

*Sawyer*, 642 F.3d at 564.

Thus, in entering the Order, this Court has decided with finality that a putative class cannot be certified because Plaintiff failed to establish that common issues of fact would predominate or that a class action would be a superior method of adjudicating the claims alleged, regardless of whether or not there is an adequate class representative. Unless the Court were to reverse its ruling on both of those elements, Plaintiff's motion to substitute the class representative is not ripe for consideration and must be denied as a nullity. Further litigation of the putative class alleged in this case – and in Mr. Izsak's administratively closed case – is forever barred by the doctrine of collateral estoppel, and CCL is entitled finality from this seemingly endless five-year-long class litigation.

Indeed, while Plaintiff argues in the Motion that courts routinely permit substitution of class representatives, unless doing so would result in prejudice to the defendant, Plaintiff notes parenthetically in the Motion that his request for substitution is conditioned upon this Court granting reconsideration under Rule 59(e) (although unsaid by Plaintiff, the Court would also have to reverse its ruling on predominance and superiority).

Nonetheless, in making the argument for substitution, Plaintiff has the audacity to assert that substitution would not result in any prejudice to CCL.[36]  Such argument lacks merit, as CCL has been litigating against the same putative class for five years in multiple jurisdictions, including claims of the proposed class representative David Izsak, a co-plaintiff represented by Mr. Salam, in a similar putative class action in the United States District Court for the Southern District of Florida that has been administratively closed for four years.  Moreover, the authority relied upon by Plaintiff is plainly distinguishable – largely cases in which substitution of class representatives was being discussed or permitted *after certification*, when a class representative falls out of the case through settlement or other reasons.[37]  One case cited by Plaintiff involved substitution of a class representative found to be inadequate, which was the *only basis* for denying class certification and the court delayed entering the denial to permit substitution to cure the inadequacy.[38] These cases do not support Plaintiff's request for substitution in this case, where certification has been denied on grounds unrelated to the adequacy element and otherwise applicable to all putative class members.

Nevertheless, despite the long passage of time since this litigation was initiated, Plaintiff, Mr. Izsak, and any other putative class members are free to pursue any individual claims against CCL.  However, as it stands in this case, the Court's Order bars re-litigation of class certification

---

[36] Motion, at 17 (citing *Chapman v. Wagener Equities*, 2012 U.S. Dist. LEXIS 176857, at *21 (N.D. Ill. Dec. 13, 2012) (motion for substitution may be denied where substitution would result in substantial delay of the proceedings, prejudice to the defendant, or where plaintiff's counsel fails to bring the motion in a timely manner).  Even if substitution were appropriate for consideration, Plaintiff cannot satisfy the three factors in *Chapman* because re-starting a putative class under Izsak in 2019 – after Gordon tried in 2017, and Jackson gave up in 2016 – would be grossly prejudicial and futile, is anything but timely brought, and would substantially delay the long overdue closure of these proceedings that the Court's Order has at last provided.

[37] *Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006); *Little Caesar Enterprises, Inc. v. Little Caesar Enterprises, Inc.*, 172 F.R.D. 236 (E.D. Mich. 1997); *Memisovski v. Garner*, 2002 WL 31687665 (N.D. Ill. Nov. 27, 2002); *Birmingham Steel Corp. v. Tennessee Valley Auth.,* 353 F.3d 1331 (11th Cir. 2003).

[38] *In re Northshore University Healthcare Antitrust Litigation*, 2018 WL 2383098 (N.D. Ill. March 31, 2018).

39525897.1

for this putative class, and the doctrine of collateral estoppel would preclude a new class representative from re-litigating class issues decided with finality in the Order in this case or any other case. Thus, Plaintiff's request to substitute a new class representative must be denied.

## **CONCLUSION**

Accordingly, CCL requests that the Court deny Plaintiff's Combined Rule 59(e) Motion for Reconsideration of Class Certification Order and to Substitute Class Representative because Plaintiffs has failed to articulates any manifest error of law or fact in this Court's Order or other valid basis to justify reconsideration of the Order or substitution of a new class representative.

DATED: April 5, 2019          Respectfully Submitted,

GREENSPOON MARDER, P.A.

*/s/ Jeffrey A. Backman*
Richard W. Epstein
*Admitted Pro Hac Vice*
Fla. Bar No. 229091
Richard.Epstein@gmlaw.com
Jeffrey A. Backman
*Admitted Pro Hac Vice*
Fla. Bar No. 662501
Jeffrey.Backman@gmlaw.com
200 East Broward Blvd.
Suite 1800
Fort Lauderdale, FL 33301
Tel: (954) 491-1120
Fax: (954) 343-6958

Brian R. Cummings, Esq.
*Admitted Pro Hac Vice*
Fla. Bar No. 25854
brian.cummings@gmlaw.com
401 E. Jackson Street, Suite 1825
Tampa, FL 33602
Tel: (813) 769-7020
Fax: (813) 426-8582

-and-

39525897.1

Timothy A. Hudson
TABET DiVITO & ROTHSTEIN, LLC
209 S. LaSalle Street, Suite 700
Chicago, Illinois 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
Firm No.: 38234
THudson@TDRLAWFIRM.com

*Attorney for Defendant CCL*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 5, 2019, the foregoing document was served to all parties of record listed below via electronic mail:

Kyle Alan Shamberg
Lite DePalma Greenberg, LLC
211 W. Wacker Drive
Suite 500
Chicago, IL 60606
(312) 750-1265
Email: kshamberg@litedepalma.com

Katrina Carroll
Lite DePalma Greenberg LLC
211 W. Wacker Drive
Suite 500
Chicago, IL 60606
(312) 750-1265
Fax: 973-877-3845
Email: kcarroll@litedepalma.com

/s/ Jeffrey A. Backman
Jeffrey Backman

39525897.1