# "EXHIBIT 5"

| | |
|---|---|
| From: | Jeffrey Backman |
| To: | ben langille (benlangille44@gmail.com); ben langille (benlangille@outlook.com) |
| Cc: | Tiffany N. Hardy (thardy@edcombs.com); Richard Epstein; Khia Joseph |
| Subject: | Brian Jackson v. AdSource, et al. (20581.0192) [IWOV-ACTIVE.FID8708511] |
| Date: | Tuesday, April 21, 2015 1:30:44 PM |
| Attachments: | image001.jpg |
| | Letter to AdSource via CCL.doc.pdf |

Ben, attached is a letter from Tiffany Hardy, counsel for the Plaintiff Brian Jackson in this case pending in the Eastern District of New York. She has asked that I forward the letter to you in the hopes of receiving a response. We would appreciate you responding to both of us as soon as possible with the responsive information.

I did receive the spreadsheet you sent on Friday with what you described as your opt-in data from 4/2014 – 3/2015. I am providing a copy of that to Ms. Hardy.

Sincerely,

**Jeffrey A. Backman, Esq.**
*Shareholder*
200 East Broward Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Toll Free - (888)491-1120
Direct Fax - (954)213-0140
Direct Dial - (954)734-1853
Email: jeffrey.backman@gmlaw.com
http://www.gmlaw.com

gm-horizontal-two-color.jpg


LAW OFFICES
## EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark
Suite 1500
Chicago, Illinois 60603
Phone 312/739-4200
Fax 312/419-0379

April 17, 2015

Ben Langille
Burton Langille
Adsource Marketing
305-5670 Spring Garden Road
Halifax, NS Canada B3J 1H6

Dear Mr. Langille,

As a follow-up to our prior discovery request and pursuant to Fed.R.Civ. P. 37 Plaintiff requests responses to the following discovery requests:

1. If Adsource contends plaintiff furnished his cellular telephone number to Adsource, then identify the person(s) involved in obtaining the number, the date(s) on which the number was obtained, the person(s) who provided the number, and each person involved in maintaining a log or other record of plaintiff's contact information.

2. If Adsource contends plaintiff authorized the automated placement of text messages to his cellular telephone by defendants to Adsource, then identify the person(s) involved in obtaining that consent, the date(s) on which that consent was obtained, the person(s) who provided that consent, and each person involved in maintaining a log or other record of plaintiff's consent.

3. Identify how Adsource obtained plaintiff's telephone number and the telephone number of others to send advertising text messages.

4. Identify the person(s) who participated or were involved in any way in Adsource's decision to send text message advertisements to plaintiff.

5. State the number of, and name and telephone number, each of the (a) persons (b) who, on or after April 18, 2010, (c) were sent text message calls by Adsource on behalf of defendant CCL.

6. Describe in detail all procedures Adsource used to remove cellular telephone numbers from the list of telephone numbers it calls.

1

7. State whether or not Adsource used "in-house," "cloud based," or "third party" hardware and software or ATDS to send text messages and or contact consumers and/or third parties related to advertising; for "in-house" dialers, please identify all machines and equipment by make, model, supporting systems including the hardware and software; if they are cloud based, also include where this equipment is located/stationed; and if third party based, also state the name and address of the company that made any telephone call in connection with an advertisement on behalf of CCL to plaintiff.

8. Identify and describe fully any and all computerized, mechanical, manual, or other system(s) that Adsource used, maintained, or operated to record any and all mail, telephone, in-person, or other forms of communications, or attempted communications, with any persons in connection with advertisements on behalf of CCL, including the type of communication, the target address/phone number, the dialing equipment used, including ATDS, pre-view mode software, etc., including type and location, who/what dialed the number, the substance of the communication, ANI/caller ID used, ANI II used, CPN used, as well as the date/time the communication or attempted communication occurred.

9. State what Adsource's policies and procedures were for operating such hardware and software used to send text message to consumers.

10. With respect to each expert whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

11. Identify all insurance policies covering claims arising or made between April 16, 2010 and on or before July 26, 2014 which contain (a) errors and omissions coverages, including such coverage as an extension of directors' and officers' liability coverages, (b) coverage for advertising injury, (c) coverage for property damage, (d) coverage for collection activities, (e) general liability coverages, or (f) any other coverage which may apply to this case.

12. Identify all hardware or other equipment used to send text messages

13. Identify all software used to send the text messages

14. Identify all lists and logs on which plaintiff's cellular telephone number or any other telephone number associated with plaintiff appears.

15. Identify any other opt-ins or correspondence Adsource received from the same IP address as Plaintiff's alleged opt-in.

2

We also request that AdSource produce the following:

1. Please produce the manuals for all hardware, software and other equipment used to send text messages on behalf of CCL

2. Please produce the manuals for all hardware, software and other equipment used to send text messages to Plaintiff

3. Any and all written procedures in place for TCPA compliance.

4. All correspondence to or from CCL and any insurance company, broker, or agent concerning or relating to a reservation of rights or denial of coverage.

5. Any and all written procedures in place for removing wrong telephone numbers from Adsource's system.

6. For each phone number that Adsource used to send the text message to plaintiff, provide call records up to 3 years prior from the associated phone companies, along with the companies' names.

7. All records of outgoing calls Adsource made to Plaintiff's wireless or wireline phone(s) for the four years prior to this lawsuit being filed.

8. All manuals, communications and other documents relating to telephone hardware, software, and other telephone equipment used to call plaintiff.

9. All invoices over the past five years for telephone equipment or software.

10. All invoices over the past five years for telephone equipment or software issued to CCL.

11. All invoices over the past five years for telephone equipment or software paid by CCL.

12. All contracts, agreements, manuals, and communications with third parties concerning Adsource's telephone systems and dialing telephone calls over the past five years.

13. All contracts, agreements, manuals, and communications with third parties concerning Adsource's telephone systems and dialing telephone calls over the past five years.

14. All documents that identify persons involved in Adsource's decision to use hardware and/or software to send mass text message advertisements.

15. All documents that discuss or relate to policies, practices, or procedures associated with advertising via text messages to cellular phones, including but not limited to use of an automatic telephone dialing system.

3

16. All manuals, memoranda, instructions and other documents, which discuss, describe, or set forth standards, criteria, guidelines, policies or practices relating to the Telephone Consumer Protection Act as they relate to Adsource sending text messages on behalf of Caribbean Cruise Line, Inc.

17. All documents relating to the maintenance by Adsource of policies, practices, or procedures adapted to avoid calling or texting persons who did not consent, or revoked consent, on their cellular telephones.

18. All contracts and/ or agreements that authorize AdSource to send a text message to Plaintiff on behalf of CCL.

19. All contracts and/or agreements between AdSource and CCL between April 2010 and present.

20. All documents containing records of communications with plaintiff that involved complaints by plaintiff of automated calls or requests that such calls not be made.

21. All documents relating to plaintiff, or which are indexed, filed or retrievable under plaintiff's name or any numbers, symbols, designations or codes (such as an account number or Social Security number) assigned to plaintiff, including computer records and account notes.

22. The complete file, including but not limited to computer information, for all (a) persons (b) who, on or after on or after April 18, 2010 (28 U.S.C. §1658), (c) were sent text message calls by Adsource on behalf of defendant CCL, including any documents that purport to show consent.

Additionally, please update the spreadsheet so that it corresponds with the class period in this case which begins April 18, 2010.

Please advise by Monday, April 20, 2015 when we can expect a response to the questions presented herein. Thank you in advance for the expedited handling of this matter.

Respectfully Yours,

*Tiffany N. Hardy*

Tiffany N. Hardy