## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD GORDON, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **14 C 5848** |
| **CARIBBEAN CRUISE LINE, INC., a Florida Corporation, and TRAVEL REWARDS, LLC, a Florida limited liability company,[1]** | ) ) ) ) | **Judge John Z. Lee** |
| **Defendants.** | ) ) | |

## ORDER

Plaintiff urges the Court to reconsider its denial of the motion for class certification and to substitute David Izsak as class representative [153]. For the reasons provided herein, the motion to reconsider is denied, and the request for substitution of the class representative is stricken as moot.

## STATEMENT

District courts enjoy broad discretion to entertain motions to reconsider prior decisions. *See Patrick v. City of Chi.*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015); Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."). But while motions for reconsideration are permitted, "they are disfavored." *Patrick*, 103 F. Supp. 3d at 911. They serve a narrow purpose: correcting manifest errors of law or fact and presenting newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). This places a heavy burden on the moving party and makes a motion for

---

[1] Although Plaintiff also sued Travel Rewards, LLC, that Defendant was dismissed on September 10, 2014. *See* Stipulation of Dismissal, ECF No. 21.

reconsideration an inappropriate medium to "rehash" past arguments, *Patrick*, 103 F. Supp. 3d at 912 (citations omitted), or revisit improvident strategic decisions made earlier, *Birdo v. Dave Gomez*, No. 13-CV-6864, 2016 WL 6070173, at \*1 (N.D. Ill. Oct. 17, 2016) (citation omitted). Motions for reconsideration will be granted only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). Given these exacting standards, issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.* (citation omitted).

The Court declined to certify a Rule 23(b)(3) class in part because predominance and superiority were lacking. Specifically, the Court held that, "[g]iven the Lead Lists and Langille's declaration, individualized factual inquiries will be necessary to determine whether the individuals on the Lead Lists did, in fact, consent, and those issues will predominate the litigation." *Gordon v. Caribbean Cruise Line, Inc.*, No. 14 C 5848, 2019 WL 498937, at \*10 (N.D. Ill. Feb. 8, 2019).

Plaintiff first argues that the Court made an error of apprehension when it held Plaintiff accountable for the failure of other counsel to seek discovery in *Jackson v. Caribbean Cruise Line, Inc.*, 14-cv-02485-ADS-AKT (E.D.N.Y.). The Court had directed the parties to coordinate discovery between this case and *Jackson* because the cases were nearly identical. To that end, the Court stayed this litigation in order to allow Plaintiff's counsel to file an appearance on Jackson's behalf in the New York litigation, which counsel did, and to pursue discovery directly from the source of the alleged text messages, Adsource, and its president, Benjamin Langille.[2] This was an opportunity for Plaintiff to ferret out discovery in support of class certification, including crucial

---

[2] The idea was that if the class in *Jackson* were certified, then Gordon would be subsumed into the *Jackson* class.

information from Adsource regarding lists of those who had consented to receive text messages from Caribbean Cruise Line ("CCL"). Although discovery proceeded for over a year after counsel's appearance was filed in *Jackson*, counsel did not depose Langille or any other Adsource representative. Nor did counsel challenge CCL's work-product designation of Langille's declaration. Simply put, counsel did not obtain any information from Adsource other than what CCL had produced on Adsource's behalf.[3]

Furthermore, when the *Jackson* plaintiff voluntarily dismissed the case, the stay in this case was lifted and discovery continued. This was Plaintiff's counsel's second chance to garner discovery from Adsource and Langille. And yet, none was sought.

Lastly, at oral argument on the motion to certify the class, the Court asked Plaintiff's counsel whether it would be advisable to re-open discovery in order to depose Langille, thereby eliminating any arguable prejudice or surprise. *See* 10/4/17 Hr'g Tr. at 32:18–33:6, ECF No. 134; *see also* 9/18/18 Order at 3, ECF No. 143 (holding that "CCL's use of Langille's declaration is neither surprising nor prejudicial"). Plaintiff's counsel responded, "I have said and I still believe that we don't need it in order to meet the class certification standard here." 10/4/17 Hr'g Tr. at 33:11–13.

All of this is to say that the Court did not misapprehend any facts or hold Plaintiff's counsel accountable for the failures of lead counsel to seek discovery in *Jackson*. Rather, the Court correctly understood the facts and held Plaintiff's counsel accountable for their own failure to seek pivotal discovery in support of class certification, both in *Jackson* and in this case.

---

[3]     Plaintiff notes that, contrary to a statement in the February 8, 2019, order, Plaintiff's counsel was not the one who originally filed the *Jackson* case. Plaintiff is correct on this point. But this does not negate the opportunities that counsel had to pursue discovery as to Adsource and Langille in that case.

Next, Plaintiff argues that the Court erred as a matter of law when it held that individual issues of consent predominated, thereby negating the superiority of proceeding as a class action. CCL provided specific evidence that a significant percentage of the putative class consented to receive texts. This evidence included: (1) Adsource's Lead List and Second Lead List, which provided the name, phone number, and IP address of over 300,000 individuals who were recorded by Adsource as having consented to receive text messages from an auto-dialer, Def.'s Ex. 3, Poole Decl. ¶¶ 12–14, ECF No. 105-3; Pl.'s Ex. 7, List, ECF No. 125-2; Pl.'s Reply Ex. 1, ECF No. 126-1, and (2) Langille's declaration attesting that consent was given by those who had entered their names and phone numbers on Adsource's landing page and checked the box indicating that they agreed to receive text messages via an auto-dialer, Def.'s Ex. 5, Langille Decl. ¶¶ 3–12, ECF No. 105-5.

While Plaintiff attempted to discount the probative value of Adsource's Lead Lists and Langille's declaration, Plaintiff's decision to forgo discovery from Adsource or Langille made that a difficult argument to support. Plaintiff offered up himself as a single example of a putative class member with a phone number appearing on a Lead List who had not consented to receive text messages.[4] Plaintiff also hand-selected fifty phone numbers from the Lead List entries recorded between May 29, 2014, and February 9, 2015, which, according to public records, were not associated with the corresponding names as of 2017. But, as the Court noted when denying class certification, the public records in 2017 showed that many of the names first became associated with the phone numbers *after* February 2015, which does not tend to prove that the list of names was false prior to or in February 2015. *See Gordon*, 2019 WL 498937, at *10 n.4. Lastly, Plaintiff

---

[4]     Although Plaintiff also relied on Brian Jackson and Richard Guiley as examples, they settled their claims against CCL and therefore could not be members of the putative class. Plaintiff further relied on David Izsak, but Izsak has not asserted that his phone number appeared on any Lead List. Plaintiff's reliance on Izsak, therefore, does not suggest that the Lead Lists contain false representations of consent.

4

relied on calls by unidentified individuals complaining of unwanted text messages, but did not attempt to correlate those phone numbers with numbers on the Lead Lists. By picking and choosing certain examples to establish the lack of consent, Plaintiff proved CCL's point that individualized determinations of consent would dominate the proceedings.

The only new law that Plaintiff cites in support of his motion to reconsider is an unpublished order issued by a district court in Arizona, *Knapper v. Cox Communications, Inc.*, No. CV-17-00913-PHZ-SPL (D. Ariz. Feb. 6, 2019). *See* Pl.'s Supplemental Authority, ECF No. 146-1. *Knapper* is distinguishable from this case because the putative class consisted of persons who were not Cox Communications, Inc. ("Cox") subscribers, but who received an auto-dialed call from Cox on a cellular phone during a particular time frame. *Id.* at 2. In an effort to establish individualized issues of consent, Cox relied on evidence that some calls were marked as "wrong numbers" but were later verified as correct. *Id.* at 9. In response, the *Knapper* plaintiff proposed a methodology for utilizing a reverse-lookup service to sanitize the list of wrong numbers on a class-wide basis. *Id.* at 9–10. Partly because of that methodology, the *Knapper* court held that Cox's evidence was not indicative of consent given by non-subscribers and that such evidence did not defeat predominance. *Id.*

Unlike in *Knapper*, CCL has provided specific evidence of consent. As discussed above, CCL has provided records of over 300,000 individuals recorded by Adsource as having consented to receive text messages via auto-dialer, as well as a declaration by Adsource's president that attests to the method by which such consent was given. Also in contrast to *Knapper*, Plaintiff in this case has not proposed any viable methodology for establishing lack of consent on a class-wide basis. This is why the Court previously concluded that individualized assessments of consent will predominate and that a class action would not be a superior method of litigating. Because it is Plaintiff's burden to satisfy Rule 23's prerequisites, the Court finds no error in its prior ruling and

denies Plaintiff's motion to reconsider. Plaintiff's request to substitute a class representative is thus denied as moot.

Date:   1/22/20                                                      /s/ John Z. Lee